Rogers et al. *v.* Bancroft et al.

AARON ROGERS AND ELISHA F. ROGERS *v.* AMASA BANCROFT AND LEVI BARRETT.

In an action on the case for diverting water from the plaintiffs' mill, it is not sufficient for the defendant to show an outstanding right in some third person to take the water for the use of the premises occupied by the defendant, paramount to the plaintiffs' right to the water, without showing title from such third person to himself.

The extent of an exception, in a deed conveying mills and water privileges, of " *the privilege of one half of the bark mill owned by* " certain third persons, is to be determined by ascertaining the extent of the title which such third persons had to the water at the time, for the use of the bark mill.

As between adjacent mill owners the exercise by one, for more than fifteen years, of the right to the first use of the water will extinguish any paramount right to water, which the other may have had.

Where tenants in common of mills and water privilege execute partition deeds at the same time, each to the other, the deeds are to be taken as one instrument; and any grant or limitation of the use of water, contained in either, is to be treated as binding on both the parties and those claiming under them.

A. and B. were tenants in common of certain land, and of a saw mill thereon, standing on the north side of a stream passing through the land, and of a bark mill upon the south side,—both mills being moved by means of the same dam; and they executed, at the same time, partition deeds, each to the other. A. conveyed to B. all on the north side of the stream, without any mention of the water, or water privilege; and the deed from B. to A. contained this clause,—" *Also the* ' *tan yard and bark mill, with a privilege of water for the said bark mill,* ' *when I, the said B., my heirs or assigns, do not want the water for the use* ' *of the works now standing on the said dam, or any others to be erected here-* ' *after, that draw no more water than those now standing.*" And it was held, that this gave to the owner of the saw mill a paramount right to the use of the water for his mill, or for any other works drawing no more water; but that this right was confined to works supplied with water by means of the same dam, then standing, or one substituted for it, in case of its destruction; and that it did not give to B., or his assigns, the right to claim, that an amount of water, equal to what would be required for such works, should be allowed to pass over that dam and be collected in a pond raised by a dam built below, and be there used to supply mills by means of such lower dam.

And where, in such case, the deed from B., under which the plaintiff derived his right to use the water at the lower dam, conveyed to the plaintiff the right to erect such lower dam, and, " *if he should not build the dam at the place desig-*

*nated*," conveyed a right, which was claimed by the plaintiff to be the privilege of taking water from the upper pond, and it appeared, that .the plaintiff did build a dam at the place designated, it was held doubtful by HALL, J., whether this was not merely a grant of either one of the two privileges, at the election of the grantee, and whether, having elected to erect .the dam, he could also claim the use of water, which was only granted in case he did not erect the dam;—but this point was left undecided.

TRESPASS ON THE CASE for diverting the water from the plaintiffs' mill. Plea, the general issue, and trial by jury, September Term, 1845,—WILLIAMS, Ch. J., presiding.

On trial it appeared, that previous to 1813 there was a dam across a stream of water in Danby, in the north end of which there was a flume, from which water was taken to carry a saw mill, standing on the north side of the stream, and that in the south end of the dam there was a tube, through which water was conducted to carry a bark mill, situated on the south side of the stream; and that the bottom of the flume at the north end of the dam was about a foot lower than that of the tube at the south end. The plaintiff gave in evidence a deed from Hosea Williams to David Young and Peleg Nichols, dated April 1, 1813, conveying the land upon both sides of the stream and the mills and water privilege, but reserving, among other things, "the privilege of one half of the bark mill owned by ' Joseph & Jesse Lapham, and all the privilege of going to and from ' said mill with their teams, while the present bark mill stands, and no longer." On the 23d of April, 1816, David Young and Peleg Nichols, by partition deeds of that date, each to the other, divided between them the premises thus conveyed to them by Williams. Nichols conveyed to Young all the land on the north side of the stream, with the mill and mill privilege, without any reservation expressed in terms; and Young conveyed to Nichols all the land on the south side of the stream, with a clause in the deed, in reference to the bark mill, in these words,—"And also the tan yard and bark ' mill, with a privilege of water for the said bark mill, when I, the ' said David Young, my heirs or assigns, do not want the water for ' the use of the works now standing on the said dam, or any others ' to be erected hereafter, that draw no more water than those now standing." The defendants occupied .the bark mill under the title thus acquired by Nichols.

It farther appeared, that previous to 1838 Aaron Rogers and Seth Griffith, under whom the plaintiffs show title, were the owners of a marble and grist mill situated on the stream above mentioned, below the premises conveyed by Williams to Young and Nichols, which mill was supplied by water from a dam erected below the same premises; and on the 23d of June, 1838, David Young conveyed by deed to the said Rogers and Griffith the privilege of erecting a dam across the said stream on his land, between their old dam and the old dam upon the premises conveyed by Williams to Young and Nichols, specifying particularly the place, and of raising the water thereby to a certain height, and of conveying the water from such new dam, in tubes, across his land to their said mill; and the deed then contained this clause,—"And the said Rogers and Griffith, 'their heirs or assigns, if they should not build a dam at the place 'above designated, they shall have the privilege of carrying the wa- 'ter from the same level in a flume from the same place, and of 'occupying and enjoying the same quantity of water, to their works 'below, that I, the said Young, am entitled to, by any deed I may 'have, from the old saw mill dam, having reference to said Young's 'title, which will be found in a deed from Hosea Williams to Peleg 'Nichols and David Young, in 1813, and a deed from Peleg Nich- 'ols to David Young in April 23, 1816." Under this deed the plaintiffs, or those under whom they claim, erected in 1838 a new dam, below the old saw mill dam, and at the place specified in said deed, and have since taken the water from the same, through a tube, to propel their mill, in the manner specified in said deed. In 1840 Young conveyed to William Kelley and others, by deed, the old saw mill and all the privileges connected therewith, except what he had conveyed in 1838 to Rogers and Griffith, and particularly specifying, that all the water used by them should be returned into the pond raised by Rogers and Griffith's new dam; and in 1844 a marble mill was erected by Kelley in place of the old saw mill.

The plaintiffs gave evidence tending to prove, that the works on the north side of the stream had always used and enjoyed the prefer- ence of water, over the bark mill; and that the marble mill owned by Kelley, which was supplied by the water taken from the old dam, and the plaintiffs' mill, which was moved by the water taken from the new dam, did not, together, require more water, than was re-

quired by the works standing on the north side of the stream, and supplied from the old dam, at the time the partition deeds between Young and Nichols were executed.

It farther appeared, that in the summer of 1844, when the water was running into the tube, by which it was conveyed to the defendants' bark mill, and did not run to the plaintiffs' mill, and when it was needed for carrying the plaintiffs' mill, the plaintiffs obstructed the mouth of the defendants' tube, at the old dam, and thereby prevented the water from flowing to the bark mill, and caused it to flow over the old dam and down the stream to the plaintiffs' pond, and so to the plaintiffs' mill; and that the defendants removed the obstacle, so placed by the plaintiffs upon the defendants' tube, and thereby caused the water to flow to their bark mill,—which is the injury declared for.

The defendants requested the court to charge the jury, that the plaintiffs had no right to obstruct the defendants' tube, and thereby cause all the water in the stream to flow over the dam and down the stream, where it could not be used for any works standing on the premises so conveyed to Young by Nichols, and when it was not wanted for such works; and that, the plaintiffs having so obstructed the tube, the defendants had a right to remove the obstruction and cause the water to pass through the tube to their bark mill.

But the court instructed the jury, that the plaintiffs, under the deeds above mentioned, had the first right to the water, when wanted for their use; that they had a right to obstruct the defendants' tube and cause the water to flow over the dam, provided there was not a greater quantity of water in the stream, than was required to drive the works of Young at the time of the deed from Nichols to Young, and that it was necessary, to carry the plaintiffs' works, and there was not a sufficiency of water, without placing such obstructions, at the time they were placed by the plaintiffs; and that the defendants would be liable, in this action, for removing the obstructions so placed by the plaintiffs over the defendants' tube.

The jury returned a verdict for the plaintiffs. Exceptions by defendants.

*C. B. Harrington* and *R. Pierpoint* for defendants.

1. By the terms of the reservation in the deed from Williams to Nichols and Young, one half of the bark mill and its privileges was not conveyed; but Nichols and Young were made tenants in common with the Laphams. This reservation necessarily included a sufficient quantity of water for the ordinary use of the bark mill one half of the time. 3 Bac. Abr., Tit. Grants, 398. *Pattison* v. *Hull,* 9 Cow. 747. *Hasbrouck* v. *Vermilyea,* 6 Cow. 676. *Jackson* v. *Tibbits,* 9 Cow. 241. The defendants possessed the bark mill, and hence they necessarily possessed all the rights and privileges not conveyed by Williams to Nichols and Young; and the plaintiffs cannot recover, unless they prove, that the defendants have used the water to drive the bark mill more than one half of the time.

2. The partition deeds between Young and Nichols, having been executed at the same time and in reference to the same subject matter, must, for the purpose of ascertaining the intent of the parties, and their legal import, be construed together. *Raymond* v. *Roberts,* 2 Aik. 204. *Strong* v. *Barnes,* 11 Vt. 221. *Reed* v. *Field et al.,* 15 Vt. 672. *Stephens* v. *Baird,* 9 Cow. 274. The deed from Young to Nichols shows, that the right of Nichols to use the water for the bark mill was subordinate to the right of Young to use the water to propel his "works," — subject, however, to this important qualification, that Young was limited in his right, and could only use the water to propel his works then on *that* dam, or such as drew no more water, which might thereafter be erected on that dam,—thereby excluding all inference, that he had any right to use the water, to the prejudice of Nichols, at any point off the premises conveyed to the parties by Williams, or elsewhere, except at that dam;—and if Young had no such right, he could, of course, convey none to the plaintiffs.

3. The conveyance from Young to Rogers and Griffith does not give to them any right to take the water from the upper dam.

*S. H. Hodges* for plaintiffs.

1. Under the partition deeds between Young and Nichols and the conveyance from Young to the plaintiffs, the latter are clearly entitled to the use of the water necessary to carry their works, whether Kelley has such right, or not. *Biglow* v. *Battle,* 15 Mass. 313.

*Bliss* v. *Rice,* 17 Pick. 23.   *Ashley* v. *Pease,* 18 Ib. 268.   *Saunders* v. *Newman,* 1 B. & A. 258.

2. This easement was not restricted to works erected on the premises conveyed by Nichols to Young; but the water might be carried to works erected elsewhere.   *Bliss* v. *Rice,* above cited.

3. The acts of the defendants, complained of in the declaration, were infringements upon this easement; it being expressly found, that the water was wanted, at the time, to carry the plaintiffs' works.

The opinion of the court was delivered by

HALL, J.   Several objections are made to the ruling of the court in this case.

It is urged on the part of the defendants, that the reservation in the deed from Williams to Young and Nichols of "the privilege of one half of the bark mill," he being at the time of the execution of the deed the owner of the land covered by the stream and on both sides of it, included, as incident to the bark mill, a water power sufficient for its proper use as such, and that, under that reservation, the defendants might lawfully do the act complained of. If it be conceded, that the use of water might be conveyed, or reserved, as incident to a mill, still I think the objection is, in this case, untenable, for several reasons.   In the first place, the defendants show no title to this half of the bark mill, under the Laphams, in whose favor the reservation was made; and until they show, that they have succeeded to their right, whatever it was, they should be holden to have done the act complained of under the title which they have proved. Besides, the clause in the deed, upon which the defendants rely, is, in effect, an exception from the conveyance of the "privilege," whatever it might be, of the Laphams in one half of the bark mill,—leaving the extent of the privilege to be measured by such title to the bark mill, as the Laphams might be able to show.   For any thing that appears, the right of the Laphams to the use of the water might have been subservient to a superior right in Williams; in which case such superior right would have passed to Young and Nichols by the very deed containing the reservation.   And again, the case finds, that ever since 1816 the works on the north side of the stream have always claimed and enjoyed, as against the bark mill, the first use of the water; which first use of the water for more than fifteen years

would, of itself, be sufficient to extinguish any paramount right in the bark mill, and put the defendants upon showing the extent of the subservient right claimed by them.

The next objection, which is made to the judgment of the court below, arises upon the construction given by the court to the partition deeds of Young and Nichols, under which the respective rights of the plaintiffs and defendants are claimed. The plaintiffs claim the preference of the water for their marble and grist mill over the defendants' bark mill, under these deeds, by virtue of their conveyance from Young in 1838; and the charge of the court was in accordance with their claim. The defendants insist, that, admitting the plaintiffs have acquired all the right to the water which Young could give, (which, however, they deny,) still, that the manner in which the plaintiffs used the water was an infringement of the rights of the bark mill;—in other words, they insist, that Young himself could not, as against them, appropriate the water to the use of the marble and grist mill, as the plaintiffs claim to use it.

The partition deeds, having both been executed at the same time and relating to the same subject matter, are doubtless to be taken as one instrument; and any grant or limitation of the use of water, contained in either, is to be treated as binding on both the parties and those claiming under them. *Strong* v. *Barnes*, 11 Vt. 221. *Reed* v. *Field*, 15 Vt. 672. *Ashley* v. *Pease*, 18 Pick. 221. The deed from Nichols to Young is silent in regard to the water; but that from Young to Nichols, after describing certain lands conveyed, proceeds as follows, viz,—" also the tan yard and bark mill, ' with a privilege of water for the said bark mill, when I, the said ' Daniel Young, my heirs, or assigns, do not want the water for the ' use of the works now standing on the said dam, or any others to ' be erected hereafter, that draw no more water than those now ' standing." The rights of the respective parties depend upon the construction to be given to this deed, as applicable to the facts in the case; and it should be construed in conformity to the intent of the parties to it at the time of its execution.

It appears from the partition deeds, that there was, at the time of their execution, a dam standing across the stream; that Young had works on one side of the stream, and Nichols a bark mill on the other. The contract was made with reference to the works then

moved by the water power of the dam; and it provided, that Young's works should have sufficient to carry them, and that the bark mill should only have the water, when it was not wanted for those works; but when the water was not thus wanted, it all, or at least a sufficient quantity for its purposes, belonged to the bark mill. It was foreseen, that Young might wish to substitute other works for those then in use; and to meet such a contingency, it was provided, that the quantity of water to be used by such substituted works should be measured by the quantity required for the works then in being,—that it should not exceed that quantity.

There is undoubtedly an inclination in courts to construe grants of water liberally, so as to impose no unnecessary restriction upon the manner of its use; and when the words used will admit of one construction, which would limit the use to a particular purpose, and another, which would allow the use specified to be merely a measure of the quantity to be used, the latter construction is adopted; because it is more favorable to the grantee, and also to progressive improvement in the use of water power. But this rule of construction can have little or no application to this case. It is impossible to give the owners of the works on the north side of the stream the unlimited and unrestricted use of the quantity of water, that it would require to carry their works, without wholly depriving the owners of the bark mill of the right reserved to them. For though the use of the water by the proprietors of the bark mill was subservient to that of the owners of the other works, it was nevertheless a *right*, to the extent that it was granted, and was not a mere privilege, held at the sufference of the other party.

It is not improbable, that, at some seasons of the year, no more water run in the stream, than would be sufficient to carry the works on the north side of it. At such a time, those works might use the whole of the water; but if they did not use it, the bark mill might do so. The owners of those works could not, at such a time, as against the owners of the bark mill, open their flood gate and wantonly suffer the whole to pass off down the stream. No such use, or rather no such waste, of the water could have been contemplated by the parties, at the time of the contract. The bark mill was to have the water, when it was *not wanted* by the other works. The water can in no sense be said to be wanted for those works, unless it is used

for moving them. If the works are taken down, or abandoned, the water is not wanted for them. The contract must be construed as a restriction upon Young, and those claiming under him, to the use of the quantity of water designated, for the purpose of carrying works standing upon the dam ;—that is, (giving the words "standing upon the dam" a reasonable meaning,) to the use of the water for works moved by the water power of that dam. The owners on the north side of the stream could neither insist upon having the specified quantity of water pass off at their flood gate, without use, nor, by cutting a channel around the dam, or by taking it down, could they be allowed to appropriate it to the use of other works below. Neither of these things could have been in the contemplation of the parties to the partition deeds, and either of them would wholly destroy the rights intended to be secured to the owners of the bark mill.

It only remains to apply this construction of the deeds to the facts of the case. It appears from the bill of exceptions, that at the time of the removal by the defendants of the obstruction, that prevented the water from passing to their bark mill, the water was not wanted for the works standing upon the dam in the place of the works in existence at the time of the making of the partition deeds, nor for any works drawing water from or moved by the water power of that dam. The mill of the plaintiffs is some distance below the dam, and they claim, not to draw water from the dam, but to have the water fill up the pond and run over the dam, and again fill up another pond made by a dam below, so that they may draw the water from such lower dam for their mill. This is no such use of the water, as could have been contemplated by the partition deeds. It is moreover a use manifestly injurious to the owners of the bark mill.

The dam seems to have been constructed with reference to the first use of the water by the works on the north side of the stream and to the subservient use of it by the bark mill. The flume on the north side was about one foot lower than the tube on the south side. It is quite probable, that this foot of water, thus secured to the works on the north side, might be sufficient, for a portion of the time at least, for all their purposes ; in which case, whenever the water rose so high, as to run into the defendants' tube, they might use it for their bark mill. But if the plaintiffs' claim is to be sustained, the defendants must keep their tube closed, until the water

Rogers et al. *v.* Bancroft et al.

has filled up the pond and has run over the dam and filled up anoth-
er pond below, so that a sufficient head of water has been obtained
in the pond below, to carry the plaintiffs' mill. Now, although the
plaintiffs may require no more water to drive their mill, than was
contemplated by the partition deeds, yet there is manifestly a waste
of water in filling up the two ponds, as well as a loss of time to the
defendants in the use of their bark mill, while the ponds are fill-
ing up,—to say nothing of the additional leakage of two dams in-
stead of one, and the increased loss of water by evaporation and
absorption.

By the use of the water, as claimed by the plaintiffs, the defend-
ants are put to additional trouble and inconvenience, in ascertaining
when they may use the water. If the works of the plaintiffs were
standing at the dam, in the place of those in being at the time of
the execution of the deeds, the fact, that the water was passing off
over the dam, might be a very sure indication, that it was not wanted
for them. But now such waste of the water is no indication, that
the plaintiffs do not want it. The defendants, in order to ascertain
whether the plaintiffs want the water, must go below, to their mill.
The case does not show the exact distance of the plaintiffs' mill
from the dam; but if the defendants must go below, to ascertain
whether they may use the water, may they not as well be required
to go one distance below, as another. And if the plaintiffs may have
the water run over the dam to fill up a pond below, before they use
it, may not their pond be large, as well as small, and may it not as
well be a mile, or a greater distance, below, as but a few rods?

We are all of opinion, that the use of the water claimed by the
plaintiffs was not such a use, as was intended by the parties at the
time of the making of the partition deeds,—that the use contemplat-
ed was at the dam then standing, or one substituted for it, in case
of its destruction,—and consequently, that the plaintiffs have no
right of action against the defendants for the act complained of in
their declaration.

There is another ground, on which I am inclined against the
plaintiffs. I am not well satisfied, that the plaintiffs have acquired
any right to the use of the water at the old dam, by their deed from
Young, whatever the right of Young may have been. The deed
from Young, under which the plaintiffs claim, executed in June,

1838, in the first place grants to Rogers and Griffith the privilege of erecting a dam on the grantor's land, below the old dam, and of raising the water thereby to a certain height, and of taking it from such new dam, across the grantor's land, to the plaintiffs' mill; but it gives no right to the water at the old dam. The deed then proceeds as follows, viz,—"and the said Rogers and Griffith, their heirs and assigns, *if they should not build a dam at the place designated,* they shall have the privilege" &c.,—using the language which is claimed by the plaintiffs to give them a right to the water at the old dam. Now, conceding that the language used was intended to convey Young's right, (and even that is not without doubt,) still the question would remain, whether such conveyance was to take effect absolutely, or only upon condition, that the grantees should not choose to avail themselves of the first privilege granted, namely, that of erecting a new dam.

The language of the deed is in the alternative. The privilege of erecting a dam is first granted, and then, *in case the dam should not be erected,* the privilege of drawing the water in a certain manner. Can it be said, from the language of this deed, that both privileges were absolutely granted? Was it not rather a grant of either one, at the election of the grantees? And having elected (as the case is understood to find) to erect the dam, can they also claim the use of water, which was only granted in case they *did not erect it?* I am inclined to think, as before stated, that the plaintiffs have not shown any right, under Young, to the use of the water at the old dam. But, as this point was not much argued at the hearing, the decision of the case is not put on this ground.

The judgment of the county court is set aside and a new trial granted.