## JACOB & A. D. ROOD *v.* JOSEPH JOHNSON.

*Grant of Water Power.  Construction of Deeds.  Riparian Proprietors.  Mill Owners, Superior and Subordinate rights.*

In the construction of instruments or contracts, the first rule to be regarded is to make them speak the intention of the parties, as gathered from the entire transaction. All other rules are subordinate to this one, and when they contravene it are to be disregarded. (See 11 Vt. 583.)

Where the grantor in his deed of a water privilege for a saw-mill, &c., made an exception or reservation of the water, as follows: " except in times of low water, when it is wanted for the carding and cloth dressing, and grist mill," *it was held*, that the grantee had no right to use the water, when it was wanted for the purposes named in the exception, and that if he used the water, when it was wanted for the carding and cloth dressing, or grist mill, he was liable for the damage occasioned by such use.

The grantor may convey the land and reserve all the water to himself, or he may convey the use of all or a portion of the use of the water in the stream, as a mere incorporeal hereditament, and retain the fee of the land, in himself, notwithstanding the maxim that one cannot convey the water separate from the land.

Reservations of water use in a deed will ordinarily be construed as a reservation of a measure of water, and not for a particular use, and it may therefore be changed or assigned.

The accumulation of a sand-bar in a stream, is ordinarily one of those natural results, which neither party has any right to interfere with, by direct removal. But probably where its accumulation is a common injury to both parties, either would be justified in removing the sand-bar.

The mill owner having the subordinate right must take notice when he is infringing on the right of his superior, and not reduce the water so low as to interfere with that right, and if he does so reduce it, he is liable for all damage sustained by the owner of the superior right, by being delayed for the water to accumulate.

And if the owner of the superior right moves his mill further down the stream, it would not change the relative rights of the parties, *as he would* then have the right to take as much water as before he so moved his mill.

ACTION on the case. There were two suits, both involving nearly the same question, and both suits were referred to the same referees, under rules of court, who reported substantially the following facts :

That both the plaintiffs and defendant derived titles, upon which their respective claims are based from one George N. Stevens,

whose title was not questioned by either party. The deed under which defendant claims, is dated the 26th day of March, 1832, and the description of the premises conveyed by said deed is as follows : " Beginning in the channel of Huntington River, on the " southerly line of the highway leading across said River, from " thence, up said River above the dam, to Jehiel Johns'. north line, " thence, on said line, northwardly, up the bank to the highway " thence, round on the line of said highway to the first mentioned " bound, or place of beginning, containing all the land I own on the " east side of the River, and within said boundaries, together with " the saw-mill standing thereon, together with all the privileges and " appurtenances thereto belonging, with the privilege of drawing· " water to carry said mill, except in times of low water when it is " wanted for the carding and cloth dressing, and for the grist-mill ; " the said Johnson to have the privilege of water to carry a turn- " ing-lathe, when it can be spared from the other wheels. The " said Joseph to keep a good tight flume, and keep the east end of " the dam in good repair, as long as those on the other side shall " do the same."

The deed of the plaintiffs was dated the 6th day of November, 1847, and conveyed certain lands, " together with mill-dam and " water privileges at the above described premises, excepting the " rights and privileges of Joseph Johnson, for a saw-mill and turn- " ing-lathe, as deeded to him by me on the 26th day of March, " 1832, and the rights and privileges of Alexander Ferguson, as " deeded to him by me on the 19th day of March, 1846, for a starch " factory, &c."

The deed to said Ferguson conveyed the privilege of water for the purpose of manufacturing starch, and for no other purpose.

That at the time when said Stevens executed his said deed to Johnson, there was standing on the easterly side of the stream, on the premises conveyed to defendant, a saw-mill, and no other machinery. On the other side of the stream, and on the premises subsequently conveyed to said Ferguson and the plaintiffs, there was standing a grist-mill, carding and cloth-dressing machine, which were operated by means of water taken from the same pond, from which defendant was to take water for his saw-mill.

That defendant went into possession at the time of his purchase, and the plaintiffs went into possession in the spring of 1848; and

that at the time defendant made his purchase, the saw-mill was operated by a flutter wheel, so called, and the gate, which let the water on to said wheel, was eight and one-half feet in length, by five inches wide. That the gate to the grist-mill was eighteen by twenty-two inches—the gate to the carding machine was nine by ten inches—the gate to the fulling-mill was four feet and five inches long, by three and one quarter inches wide.

That at the time the plaintiffs went into possession, the grist-mill and fulling-mill had been taken away, and the starch factory had been erected. The gate to the starch factory was nineteen and one half inches by eleven inches. At the time this suit was commenced the plaintiffs had not erected their new grist-mill, or factory, which is further down the stream than the old grist-mill. The starch factory had been operated for about three months only in each year, commencing generally the latter part of September.

The referees decided that the defendant had no right, under his deed from said Stevens, to use the water in his mill in times of low water, and when the same was wanted by the plaintiffs to run their carding machine on the other side of the stream ; and that defendant did, in several instances, in the summer of 1848, use water in times of low water, and when the same was wanted by plaintiffs to run their carding machine, and thereby injured the plaintiffs to the amount of two dollars.

That plaintiffs wanted the water for occasional and temporary purposes, irregularly, as work came in ; and the defendant claimed that he was entitled to reasonable notice of the plaintiffs' want of water.

And the referees also found, that on the west side of the stream there was a sand-bar running from near the dam to the bank above the carding-machine flume, so as to prevent the water from running into said flume in sufficient quantities to carry the carding-machine, except when the pond was nearly or quite full, and that in low water, Johnson's flume was so situated that he could draw the water down so that it would not run into the carding machine flume.

They also reported, that on the hearing, the plaintiffs offered the testimony of said Ferguson and Stevens, and that defendant objected on the ground of interest; objection overruled and testimony admitted.

Rood et al. *v.* Johnson.

In the second case, the referees found nearly the same facts; and also that plaintiffs, in 1849, entered the new building further down the stream, and put in operation therein a grist-mill, and some other machinery. That plaintiffs, to get the water on to the wheel in this new building, extended the flume of the old grist-mill and carding machine down to the new building.

The referees also decided in this suit, that defendant had no right to use the water in his mill, in times of low water, and when it was wanted by the plaintiffs to run said carding machine or grist-mill.

And that said defendant did, between the 7th day of March, 1849, and the 5th day of September, 1850, in several instances, use the water, in times of low water, and when the same was wanted by the plaintiffs, to run their carding machine and grist-mill, and thereby injured the plaintiffs to the amount of three dollars.

At the March Term 1853—PIERPOINT, J. presiding—the defendant moved to recommit, and to set aside the report, and also filed exceptions to the report, all which motions and exceptions were overruled, and judgment was rendered on the report for the plaintiffs.

Exceptions by defendant.

*Geo. F. Edmunds & A. B. Maynard* for defendant.

As there are two causes pending between these parties, involving many of the same questions, and as the first covers most of the grounds of both, we will consider that first; and in the second only such points as are peculiar to that only.

I. The referees having been bound to decide the cases according to law, and having reported the facts, judgment should be entered, as upon a special verdict, for the party prevailing upon the exceptions. *Bishop* v. *Babcock*, 22 Vt. 295.

II. The deed from Stevens—he being seized of the land on both sides of the stream—to the defendant, conveyed the absolute property in the soil, to the center of the stream, and an absolute *equality* in the use of the stream, with the *additional* right to use the *whole* water in the stream, when it should not be wanted by Stevens for " the carding and cloth dressing, and for the grist-mill."

1. The land, with its appurtenances, to the center of the stream, was specifically and absolutely conveyed, without, and independent of the additional clause of the deed; and with the land, as a *cor-*

*poreal hereditament,* and as a part of the land itself, the right to the water flowing over it, passed also. Angel on Watercourses, chapt. 1, sec. 5. *Starr* v. *Child,* 20 Wend. 149.

2. So far, then, the defendant had the right to the *equal* use of the water, with Stevens, *at all times.* *Arthur* v. *Case,* 1 Paige, 447. *Runnells* v. *Bullen,* 2 N. H. 532.

3. But this right was *only* one of equality. The defendant could not lawfully appropriate the whole water, whether Stevens had occasion to use it or not; the parties, therefore, enlarged the operation of the conveyance, by making it lawful for the defendant to use the *whole* water, except when Stevens should have occasion to use his share. This, we contend, is the plain and manifest meaning of the deed; and it is certainly the only one by which effect can be given to all the words of the instrument. *Ex antecedentibus, et consequentibus fit optima interpretatio.* Greenleaf's Cruise, vol. 2 p. 244.

III. If the construction given to the deed, by the plaintiffs, is the true one, it is manifest that the defendant's right to the water is paramount to that of all others, except when the water is wanted, in times of low water, for the " carding, cloth-dressing, and for the grist-mill;" Stevens, therefore, having granted a part of the water for the starch factory, could not be entitled to the first use of the residue, for in that way he could exclude the defendant altogether. The plaintiffs, standing upon Stevens' right, must show affirmatively, that their injury from the want of water for the specified purpose, happened *exclusively* from the act of the defendant. If it was, in fact, occasioned by the starch factory, they cannot complain.

IV. The report shows that plaintiffs suffered a sand-bar to form in the pond at the entrance of their flume, so that the water would not run into their flume in sufficient quantities to run their works, unless the dam was nearly, or quite full, and that the plaintiffs' paramount uses of the water were temporary, and occasional. Under these circumstances, had the plaintiffs a right to blockade their flume, and compel the defendant to stop his works until a large body of water should accumulate, before they would deign to take the spoonful which their temporary necessities might require? It is a cardinal and beneficial rule of law, that a man is bound so to use his own, as not to injure his neighbor. *Rogers* v. *Bancroft,* 20 Vt. 250. Angel on Watercourses § 240 *et seq.*

V. The lowness of the water alone did not make it the duty of the defendant to desist using it; the plaintiffs must have "wanted" it for a particular purpose, also, before he was bound to suspend. This want, from its very nature, was entirely contingent; and the knowledge of it rested not only peculiarly, but *exclusively* with the plaintiffs; it was *their* want. They were, therefore, bound in justice and in law, to communicate it to the defendant, before they could complain that it was not supplied. Chit. Pl. 238. Tidd's Prac. 440. *Lent* v. *Paddleford*, 10 Mass. 238. *Smith* v. *Wright*, 19 Vt. 110. *Jones* v. *Train*, 11 Vt. 444. 2 Am. L. C. 56–9. *Hatch* v. *White*, 22 Pick. 518. This last case is identical with the one at bar.

VI. Ferguson was interested in the event of the suit. He was the grantee of a part of the rights of Stevens, and therefore, just as much interested in sustaining them as the plaintiffs themselves. *Jebb* v. *Povey*, 1 Esp. 679.

As to the second suit: The old grist-mill and fulling-mill having run down and been abandoned, and no similar erection having been put in their place, the right to water in respect to them was lost. The language of the deed binds the parties to the specified uses. Angel on Watercourses, 240 *et seq*.

*D. A. Smalley, Phelps & Chittenden* for plaintiffs.

I. As Stevens owned the whole privilege, and conveyed the whole to the plaintiffs, except what had been previously conveyed by him to defendant, the only question that arises concerning the right to the water, is as to the extent of the defendant's deed.

On this point, the decision of the referees and the county court was correct.

Stevens had *the right* in his conveyance to the defendant, to reserve as much of the privilege as he pleased.

Nor were any technical words necessary to enable him to do so. It is sufficient if the intent appear upon a fair construction of the language. *Bigelow* v. *Battle et al.*, 15 Mass. 313. *Hatch* v. *Dwight*, 17 Mass. 289. *Curtis* v. *Jackson*, 13 Mass. 507. *Shedd* v. *Leslie*, 22 Vt. 498.

It is the general rule in this state in the construction of deeds, that the intent of the parties, as apparent from the terms, is to be followed, that general terms are controlled by particular, and

and that any apparent repugnancy is to be rejected.    6 Vt. 355.
12 Vt. 15.    15 Vt. 479.

Applying these rules to the deeds in question, it clearly gives to
the defendant no other right than to use the water for his saw-mill
and turning-lathe, when not needed for the plaintiffs' works on the
other side.

What might have been the effect of the deed if it had not contain-
ed this reservation is a question that does not arise.

II. The referees correctly held, that the change in the plaintiffs'
machinery, as it required no more water, did not effect their rights.
They owned the water privilege, except the subordinate right
granted defendant for a particular purpose, and could of course ap-
ply it to any use not injurious to defendant's right.    *Bigelow* v.
*Battle*, above cited.    *Johnson* v. *Rand*, 6 N. H. 22.    *Alden* v.
*Laoid*, 5 Taunton 454.    *Shedd* v. *Leslie*, 22 Vt. 498.

The defendant having only a subordinate right for a special pur-
pose, is restricted to that purpose, in his use of the water.

III. No notice was necessary from plaintiffs to defendant, when
the water became insufficient to carry both mills.    It is not requir-
ed by the conveyance.    Having the subordinate right, it is the du-
ty of the defendant to take notice; and the fact was subject to his
observation as much as to that of the plaintiffs.

IV. Stevens and Ferguson were properly admitted as witness-
es.    They had no interest in the suit or its result.    Nor could the
judgment be used, for or against them in any way.

The opinion of the court was delivered by

REDFIELD, Ch. J.    I. In regard to the extent of the grant, in this
case, from Stevens to defendant, we have not been able to see that
there is really any very great uncertainty.    The description of the
thing intended to be conveyed, so far as the water right is concern-
ed, is somewhat inartificially drawn.    And it is perhaps fairly sus-
ceptible of receiving such a construction as to give it somewhat the
air of indefiniteness.    This is often the case, when we attempt to ap-
ply the strict rules of construction to the precise words used, not
sufficiently keeping in mind, at the time, the situation of the par-
ties, and the state of the subject matter.    Taking all the words of
description here used into the account, it is clear something was in-
tended to be excepted from the grant, or in other words, reserved

to the grantor, which is technically an exception, not a reservation. And this I think is clearly expressed by the words following the word "except" in the deed: "except in times of low water, when " it is wanted for carding and cloth-dressing, and for the grist-mill." When what is wanted? of course the water. Then all the water is reserved, or excepted, which is wanted, in low water, to operate successfully the carding and cloth-dressing business, and the grist-mill. But it may be inquired, when is it low water? Of course it is low water when the defendant's saw-mill does not leave what is excepted from the grant, i. e., what is wanted for the grantors mills already erected. Here is no repugnancy. The land is conveyed, and the grantor might, if he chose, reserve the use of all the water to himself, or he might convey the use of all, or a portion of the use of the water in the stream, as a mere *incorporeal hereditament*, and retain the fee of the land in himself, notwithstanding the maxim that one cannot convey the water separate from the land. But here he chose to convey the land, and the use of the water, he desired, apparently, to restrict, so as not to render his own erections useless, and he adopts a form of expression, as if the conveyance of half the land under the water would not give the use of any water. That might be his view of the law, or it might not. To save all doubt, he says " with the privilege of drawing water to carry said mill." This alone might fairly be construed to carry more than half the water, when needful to carry the saw-mill. But this is restricted by the exception, which obviously was intended to be a reservation out of the whole grant. These words are obviously not the words of a professional scrivener, but of an inexperienced draughtsman, and any attempt to apply to words of this character, the same rules of construction, which strictly professional language might be aided by, will often fail of reaching the cardinal purpose of all rules of construction, the intention of the parties. This case, in principle, and, indeed, in its facts, is strikingly similar to the case of *Gray, admr.* v. *Clark*, 11 Vt. 583. And if the court should go here again, into an extended examination of the cases upon the subject of exceptions and reservations, which are very numerous, it could answer no good purpose. I have said all, in the case last cited, which I desire to say here. None of the cases read at the bar are as much like the present as the one last nam-

ed, and no case is authority for another upon a subject of this kind, unless the similarity approaches very nearly to identity.

Mr. Angel's chapter on reservations of water rights in grants of land, shows very fully the soundness of the grounds upon which we here go, and the cases on the subject will be found there collected, and very fairly and fully collated.

II. 'Upon the principles of the decisions of this court in *Rogers* v. *Bancroft*, 20 Vt. 250, and *Adams* v. *Warner*, 23 Vt. 395, it is obvious this reservation of water-right must be regarded as a certain *measure* of water, rather than water for a *particular use*, of course, then, the use of this water might be changed, or assigned, or both. The case of *Pringle* v. *Taylor* 2 Taunton 150, does not apply to a case of this kind, but only where the reservation is for a particular use, and then only when the use is confined to a particular gauge, which is wantonly destroyed by the owner of the right, thus bringing the case within the principle of.loss, by a voluntary confusion of goods, with the fraudulent purpose of gaining an unjust advantage, when it is thereby rendered impracticable to restore the parties to their former state and position. *Pratt* v. *Bryant*, 20 Vt. 333.

III. The suffering the sand-bar to accumulate is not such an act as would deprive the plaintiffs of their remedy against defendant. It was one of those natural results, which ordinarily neither party has any right to interfere with, by direct removal. The most that could ordinarily be done in regard to alluvion is to use means to guard against its consequences. After it occurs, the rights of the riparian proprietors are fixed by it, and it is not competent for one, who thereby suffers loss, to restore the stream to its former state. 2 Black. Com. 262. Angel on Watercourses, § 55, 56, and cases cited. But if a stream suddenly leaves its bed, which constitutes what the cases call reliction or avulsion, it may be restored. Id. § 57–60, and cases cited. *Woodbury* v. *Short*, 17 Vt. 387. But in a case like this, very probably either *party* might be justified in removing the bar, which is a common injury. But as the plaintiffs' right was the dominant one, we do not see how the defendant can complain of the plaintiffs for insisting upon their right, notwithstanding any natural changes in the bed of the stream, so long as the plaintiffs interposed no hindrance in the way of de-

fendant's removal of the obstruction. He seems to be the party primarily interested in the removal.

IV. In regard to giving the defendant notice of plaintiff's requiring the water, when there was a deficiency, there is no doubt some difficulty, if there really was any such necessity in order to have the defendant made aware of it. But that certainly does not appear by the report, and we ought not to raise any presumptions, either against the judgment below, or the decision of the referees, except where the facts, upon which such presumptions stand, are found. And when the water was drawn out so low, that plaintiffs could not run their machinery, is a matter open to the observation, of every one skilled in such matters. The defendant would scarcely need to be told of that. And as the defendant, in common with all others, was bound to know the extent of his right, and that it was subservient to that of the plaintiffs, when the water was so low that the plaintiffs could not run their machinery, he would be bound to take notice of the state of the water, and not to reduce it below that point, or if he did, would be liable to all damages, which plaintiffs sustained by being delayed for it to accumulate, so they could run their mills. It will be borne in mind that if plaintiffs' right is superior, and defendant reduces the water so low as to interfere with that right, giving notice when plaintiffs need to use it, does not relieve the plaintiffs. They are not obliged to wait for the water to accumulate, even one minute; they are entitled to have it always at the proper point when they need it. We do not apprehend, that practically, any difficulty arose on this point. If the parties had understood their rights alike, the matter of notice would have caused no embarrassment we conjecture from the case.

V. No question is made by Mr. Edmunds, in the argument, in regard to the competency of Stevens, as a witness, although that is one exception filed. And very obviously, the counsel judged correctly in not urging it. For Stevens deeded to the plaintiffs, in express terms, all the right he had not already conveyed to Ferguson and the defendant. There could not therefore any liability come upon him to the plaintiffs, on the ground of any recovery, more or less, by the defendant. And Stevens' deed to Ferguson is a mere quit-claim, and of course he took subject to the right of defendant, whose deed was upon the registry of lands. And how Ferguson, whose right was inferior to defendant's, and to plain-

XXVI    6

tiffs', could have any legal interest in a controversy between them, I do not readily perceive. We think no such interest, in the event of this suit, did exist in Ferguson, as to disqualify him as a witness.

VI. The $2 damages given in the first suit is given for using the water, by defendant's saw-mill, so that plaintiffs could not run their carding machines, and we do not learn from the report, but this use was in the same measure it was, at the time of Stevens' deed to defendant. But the second case, it is claimed does raise the question, whether the plaintiffs have not taken more than they were entitled to, by the reservation in Stevens' deed. But if that were shown, it would not defeat the plaintiffs' right to recover, when the defendants reduced the water so low, as to give them less than they were entitled to, and this is the ground upon which damages are given, in both reports, as we understand. And we do not see why the grist-mill being moved farther down the stream, should deprive the plaintiffs of their right to take, as much water, as before.

Judgment affirmed in both cases.

NOTE.—In *Sumner* v. *Foster*, 7 Pick. R. 32, it is held expressly, that the mill owner, having the subordinate right, must take notice when he is infringing upon the right of his superior, and is not entitled to notice, and the case of *Hatch* v. *White*, 22 Pick. 518 has not been regarded, as shaking it, but as decided on its peculiar facts.