ROLLIN C. TUTHILL v. HENRY SCOTT.

*Water.   Diversion.   Freshet.*

The owner of land which is being inundated by a stream breaking away from its chan-
nel, may legally turn it back to its old channel.   But he would have no right, in pre-
venting the inundation of his own land, to cause it to flow on to the land of another
except into its old channel.

The stream in question flowed in a well-defined channel in the land of the defendant until
the freshet of 1869, when it broke away, flowed down the highway a short distance and
turned on to the plaintiff's land.   The plaintiff turned it back to its old channel.   The
highway surveyor, without right, then filled up the old channel by making a road-bed
therein, thereby causing the water to flow elsewhere on the defendant's land.   The de-
fendant then took measures to stop it from flowing on to his land, and thereby caused
it to flow on to the plaintiff's land again.   *Held* that this was against the plaintiff's
right, and he could maintain an action therefor without waiting until he had suffered
actual damages from the effects of the water.

ACTION on the case.   Plea, the general issue and trial by jury,
September term, 1870, BARRETT, J., presiding.

The plaintiff claimed to recover of the defendant for divert-
ing a stream of water running over and upon lands of the defend-
ant, and causing the same to run over and upon lands of plaintiff.
It was conceded that this stream, prior to the October 1869 freshet,
had ever run in a channel crossing the highway, through a stone
bridge or sluice, and thence easterly on the north side of the high-
way, and thence northerly and easterly.   By means of the freshet
said stream was diverted from its ancient channel and made a new
one down the bed of said highway to a point at or near the west-
ern boundary of the plaintiff's land, and then left said road-
bed and extended over and upon the plaintiff's tillage field,
washing thereon large quantities of sand and gravel.   As soon as
the water subsided, the plaintiff, at a point a short distance east-
erly of where said stone bridge was, turned said stream back into
its old channel, where it continued to run until changed by the
highway surveyor as hereinafter stated.   This was done by the
plaintiff on the defendant's land, by the moving of a few stones
and some dirt or gravel with his hoe ; but the change so made
would not have prevented the brook from taking the new channel
in high water.

Soon after this, the highway surveyor of the district where said highway is, by direction of the selectmen of Townshend, and without notice to the plaintiff or defendant, and without any of the proceedings provided for by sections 84 and 85 of chapter 24 of General Statutes, turned said stream back into the channel made by said freshet, and continued the same easterly as far as said point at or near said western boundary of plaintiff's land, and constructed the road-bed in the old channel of said stream down to this point ; and at this point dug a channel, turned said stream across said road-bed and constructed a bridge and erected barriers and left the stream running down on the defendant's land at a point where it had never before run. Soon after this the stream became swollen by rains, and the water ran down to and around defendant's farm buildings, flooding his yards and doing him damage. Whereupon, the defendant, by the direction of the selectmen of Townshend, and without notice to the plaintiff, and without any of the proceedings provided for by the 84th and 85th sections of chapter 24 of General Statutes, removed said bridge and barriers and filled up the channel across said highway made by said surveyor, and by means thereof turned said stream back into the freshet channel at this point, and left the same to run down on to plaintiff's said tillage land, where it ran at the time of the freshet and where it has ever since run. The plaintiff testified that from the time defendant turned back said stream up to the commencement of this suit, there had not been rains sufficient to wash much gravel and sand upon his land, and that up to that time he had suffered no particular damage, but that since the commencement of his suit considerable sand and gravel had been washed on to his land by means of this stream, and that it would result in damage to him to have it continue to run there.

The court ruled that upon this state of facts the plaintiff was not entitled to recover, and directed a verdict for the defendant, to which the plaintiff excepted.

*C. B. Eddy* and *L. S. Walker*, for the plaintiff.

*A. Stoddard*, for the defendant.

The opinion of the court was delivered by

WHEELER, J. This stream appears to have had a well-defined channel throughout that part of its course that is material to this case, in the land of the defendant, until the time of the great freshet in 1869. At that time the water appears to have left the old channel and to have flowed over upon the land of the plaintiff in various directions, but does not appear to have made any definite channel there. The freshet caused an inundation and not a reliction, so far as his land was concerned. For this inundation the plaintiff, so far as is now shown, had no right of action against any one, because it was done by the natural action of the water. Angell on Watercourses, § 335. But he had a right to protect his land against the inundation and to prevent its continuance, if he could do so without doing any unlawful injury to any one else. As the stream had made no new channel for itself in which it could run throughout that part of its course, it was not wont to run, in that part of its course, anywhere but in the old channel. *Aqua currit et debet currere, ut currere solebat.* This was a rule of the civil law, and has become a maxim of the common law. Angell, § 93. According to this maxim, the water of this stream ought to have run in the old channel, and no one could justly complain that any one who had a right to have it run there made it run there. The plaintiff appears to have made the water of the stream to run in the old channel to relieve his land of the inundation. This, it seems, he had a right to do, and when done, the stream was as rightfully in the old channel as if it had never left it. Angell, § 332. REDFIELD, J., 26 Vt., 72. After the plaintiff had restored the stream to the old channel, it does not appear to have in any way run upon or into his land until the defendant filled up the channel made for it by the highway surveyor. Neither party does, or successfully could, insist that what the surveyor did to the stream, without proceedings to authorize it, in any way affected the rights of either party in respect to the other, any more than as if any stranger had done the same thing. The surveyor left the stream so that it would run on to the land of the defendant at a place where it had never run before, and where no one had any right to have it run against the will of the defendant.

The defendant had the right to relieve his land, at that place, of the stream, and to use any means for that purpose that would not injure the rights of others. But he had no right to stop up the channel which led the stream to his land, to relieve that of the water of the stream, without taking such measures as would be necessary to keep it away from the plaintiff's land in that part of the course of the stream. Angell, § 335. When the defendant filled up the channel that led the stream to his land, he appears to have taken no measures to keep the water away from the plaintiff's land, but to have left it to seek its way on to the plaintiff's land as it would. What he did and omitted to do in these respects diverted the water of the stream from his own land on to the plaintiff's land, against the plaintiff's right. The plaintiff was not bound to wait, in submission to this invasion, until he had sustained some actual damage by it, before he could bring an action to vindicate the right. Should the right be made out, the invasion of it alone would be an injury from which some damage would be presumed to have accrued to the plaintiff. Sedgwick, Dam., 49 ; Angell, § 428 ; *Dickinson* v. *Gr. Junc. Canal Co.*, 9 E. L. & E., 513.

For these reasons the decision of the county court, by which a verdict was directed for the defendant, is considered to have been erroneous.

Judgment reversed, and cause remanded.