LEWIS CHATFIELD v. WALTER M. WILSON.

*Watercourse. Underground water.*

The opinion of the court in this case, 28 Vt. 49, in regard to the rights of the proprietors of adjoining lands to water in the earth, or percolating under its surface, approved and reaffirmed.

But where the centre of a running stream is the line between two parties, each of them has the right to have the stream flow in its natural and accustomed channel; and neither has the right to interrupt or alter such natural and accustomed flow, without the consent and to the injury of the other.

In such a case either party may use the water in any reasonable and proper way for ordinary culinary purposes, and for drink, and the watering of cattle; and so long as he does not interfere with the equal right of the other party to the use of the stream, he may facilitate his own use of it for such purposes, by ordinary and appropriate means; as in this case, by a tub near the brook, receiving water therefrom, and an aqueduct thence to his house and barn.

CASE for the disturbance of a water-course. The declaration contained three counts, the first and second charging the defendant with having lowered and changed the channel of a brook, which divided the farms of the plaintiff and the defendant, and diverting the water therein; and the third complained of an

interference by the defendant, with the natural flow or passage, by percolation, of the water through the defendant's land to the plaintiff's, by means of which a reservoir or tub on the plaintiff's land was supplied with water.

The case was referred, and the referees reported the following facts: The defendant's farm adjoins the plaintiff's on the north and east. The north east corner of the plaintiff's farm is in the centre of a brook, and from thence westward, and down the brook, its centre is the line between the two farms. About seven feet east and above the plaintiff's line, and about six and a half feet south of the brook, and on the defendant's land, is a spring from which flows a small surface rivulet, fourteen feet in length into the brook, entering it near, but above the corner stake. Below this rivulet the earth is porous and spongy and saturated with water from the brook and spring. This porous and saturated piece of ground extends across the plaintiff's corner to the brook below and includes the site of the plaintiff's tub or reservoir. This tub is close to the plaintiff's east line, and three feet from the corner stake, and its bottom is nineteen inches below the bed of the brook at its junction with the rivulet. When the plaintiff inserted his tub in this place he dug a ditch down to the rock through this spongy soil, in a half-moon shape, from the brook below the tub to the hard bank on the south, and filled this ditch to the surface with a hard impervious soil, which operated as a kind of dam, and caused the water to rise in the tub. This tub was placed there in June, 1852, and from it water was conveyed in lead pipe to the plaintiff's house and barn, about fifty rods distant, which were solely supplied with water from this source.

About eight days after the plaintiff began to use this aqueduct the defendant dug a channel on his own land from the spring to the brook, about fifteen inches deep, and, where this channel met the brook, he dug out the channel of the brook several inches deep, with the purpose of allowing the water of the spring to pass off freely, but in fact, sinking the bed of the brook north of the stake, and causing it to pass by the corner of the plaintiff's land on a lower bed than it had before been accustomed to flow upon. The defendant also filled in the lower side of this channel with hard impervious earth, from the spring to the side

of the brook, for the purpose of preventing the water from passing into the plaintiff's tub, and in this he was successful; the water fell in the tub and ceased to flow at the plaintiff's house and barn.

The referees also found that a portion of the water of the brook naturally flowed, and had long been accustomed to flow, from the channel of the brook above down both sides of and under the plaintiff's tub, through the gravel and earth lying on a slate rock, and to pass into the brook a few feet below the tub; and that a portion of the water of the spring commingled with this water from the brook, oozing through the surface soil at the tub and passing into the channel of the brook below. They also found that this water from the spring and brook was cut off by the acts of the defendant above recited, and was diverted into the brook above the corner of the plaintiff's land; and that from this source the plaintiff's tub had been previously mainly supplied.

The referees also found that the act of the defendant in digging out and sinking the bed of the brook, at and near the corner of the plaintiff's land, abridged and diminished the plaintiff's facility of obtaining water in his tub from the channel of the brook at the corner of his land, and that notwithstanding the water from the spring had been cut off, he could still have supplied his tub, to some extent, with the water from the brook; and that this use of the water, and the right thereto was of some value to him.

The referees further reported that if the defendant was wholly wrong in what he had done as above stated, they were of the opinion that the plaintiff should recover fifteen dollars damages; but if the defendant had the right, on his own land to cut off the water that flowed from the spring and brook under and through the plaintiff's soil to the tub and into the brook below, in the manner above described, and was wrong only in sinking the bed of the brook at the corner, in that case, they found that the plaintiff should recover seven dollars damages.

The county court, at the September Term, 1857, of the Washington County Court,—PECK, J., presiding,—rendered judgment for the plaintiff, upon the report, for seven dollars damages and costs, to which both parties excepted.

Chatfield *v.* Wilson.

*O. H. Smith* and *F. V. Randall*, for the plaintiff.

1. If the plaintiff has failed to establish his right of recovery for obstructing the underground flow of the water of the rivulet and brook to his tub, he has a clear right of recovery against the defendant for changing the bed of the brook. *Tyler* v. *Wilkinson*, 4 Mason 397; *Arnold* v. *Foot*, 12 Wend. 330; *Dickinson* v. *The Grand Junction Canal Co.*, 9 Eng. L. & Eq. 520; *Smith* v. *Adams*, 6 Paige 435; *Balston* v. *Burstead*, 1 Camp. 463; *Wadsworth* v. *Tillotson*, 15 Conn. 366.

*H. Carpenter* and *P. Dillingham*, for the defendant.

1. So far as the acts of the defendant interfered with and obstructed the percolation of the water through and under the ground, he is not liable, as was directly decided in this case in 28 Vt. 49.

2. It is insisted that sinking the bed of the brook a few inches at the corner of the two farms, is an invasion of the plaintiff's right to take water. This we deny. The water had not been *diverted* from the plaintiff's land at all, and the case does not show that the rights of the plaintiff to take water *in* the brook has been invaded. The clearing out of the channel of the brook several inches deep, to allow the water of the spring to pass off freely, is *damnum absque injuria*, for which no action lies.

The plaintiff has no right to *divert* the flowing water in the brook by means of an aqueduct, or in any other manner, to his house and barn. *Vandenburgh* v. *Van Bergen*, 13 Johns. 212; Angell on Water Courses, sec. 100, 101, 126–7–8; *Adams* v. *Barney*, 25 Vt. 225; *Blanchard* v. *Baker*, 8 Greenl. 253.

BARRETT, J. The case comes before us upon the report of the referees, and the judgment rendered thereupon by the county court.

Upon any fair construction of the report, taken in all its parts, we are unable to see any difference between the case as it now stands, and as it stood when before the court, as reported in 28 Vt. 49, so far as relates to the acts of the defendant in cutting off the water by the ditch and fill upon his own land, and thereby preventing it from percolating under ground to the plaintiff's tub.

Chatfield *v.* Wilson.

But that feature of the present case which consists of the defendant's digging out the bed of the brook, and thereby causing the water of the brook to run in a lower channel, requires a distinct consideration.

The report shows that the defendant's farm adjoins the plaintiff's on the north and east; that the north-east corner of the plaintiff's land is the centre of the brook, and thence westward the centre of the brook is the line between the parties; that about eight days after the plaintiff got his aqueduct in use, the defendant dug out the channel of the brook several inches deep; sinking the bed of the brook north of the stake, and causing it to pass by the plaintiff's corner on a lower bed than it had been accustomed to flow upon; that this digging out and sinking of the bed of the brook abridged and diminished the plaintiff's facility for obtaining water in his tub from the channel of the brook at his corner; that this right was to him of some value.

We adopt as sound law the language of Baron PARKE, in *Dickinson* v. *The Grand Junction Canal Co.*, 9 Eng. L. & Eq. 513 : " that the right to have a stream running in its natural course, is not by a presumed grant from long acquiescence on the part of riparian proprietors above and below, but is *ex jure naturae*, and an incident of property, as much as the right to have the soil itself in its natural state, unaltered by the acts of a neighboring proprietor, who can not dig so as to deprive it of the support of his land " * * * " that each riparian owner is entitled, not to property in the flowing water, but the *usufruct* of its stream for all reasonable purposes."

See also the comprehensive and elaborate summary of the principles applicable to this subject by Judge STORY, 4 Mason 400, in *Tyler et al.*, v. *Wilkinson et al.*; also, Angell on Watercourses, § 95 and the cases there cited. It is clear, then, upon well settled principles, that the plaintiff had the right to have the brook flow in its natural and accustomed channel by his corner and along between his and the defendant's land; and as a correlative of this propsition, the defendant had not the right to interrupt or alter that natural and accustomed flow, without the consent and to the injury of the plaintiff. The digging out and sinking of the bed of the stream by the defendant was, therefore, clearly

against right. This is rendered the more palpable, as well as less justifiable, by the fact that it was not done for the purpose of securing or facilitating any reasonable use and enjoyment of the water of the stream by the defendant.

It is granted that adjacent riparian owners, whose land is bounded by the centre of a stream, are entitled to the water *per my et per tout*, and neither owns any specific part of the water. And yet it is equally true, that each has a right to the reasonable use of the water of the stream for proper and legitimate purposes. The right of each thus to use the water in its practical enjoyment, must have reference to the equal right of the other, and must not be so exercised as to infringe the other's equal right.

It is held in all the books and cases upon the subject, that each may use the water for ordinary culinary purposes in the family, and for drink and the watering of cattle, and may thus use it in any reasonable and proper way.

That the plaintiff might go with his pail and dip and carry away water for his family or his herds, or might drive his herds to the brook and let them drink, when and so often as it might be needful, will not be denied, provided that thereby he did not deprive the defendant of an equal enjoyment of the same right.

If this be so it would seem difficult, upon any ground of reason, to deny that the plaintiff might facilitate the enjoyment of this right by ordinary and appropriate means. It certainly was indifferent to the defendant by what means the plaintiff exercised and enjoyed that right, if his own equal right was not thereby interfered with or abridged.

Now, it is to be observed, there is no pretence that the plaintiff, by his tub and aqueduct, appropriated the water of the stream to any but a lawful and proper purpose, or that he did it in any but an ordinary and reasonable manner, or that, by what he did, he, in any way, interfered with or abridged the defendant's ability to enjoy his equal right to the use of the stream.

For the lawfulness of what was thus done by the plaintiff the authorities already cited develope the principle, and the case of *Wadsworth* v. *Tillotson*, 15 Conn. 365, clearly illustrates the practical application of it.

These views are entirely consistent with the citations from

Angell on Watercourses made by the counsel for the defendant.

To the intimation that the plaintiff had no right to divert any of the water from the stream without returning it, what is above said, as well as the case in 15 Conn. cited *supra*, is a sufficient answer. But if it were conceded to be as the defendant claims on this point, he could not avail himself of it in defence to this suit upon the facts reported. The use of the water by the plaintiff, and the means by which that use was secured, are shown to be proper, reasonable and legitimate. If the plaintiff had been guilty of any actionable fault in respect to the excess of water thus diverted, a remedy could only be obtained by suit. The wrong of the plaintiff in this respect could neither be offset, nor used in bar to his right of recovery for the wrongful acts of the defendant in infringing his right to have the water flow in its natural channel, and to the reasonable use thereof in the manner shown by the report.

We regard the second count in the declaration to be well adapted to the facts shown by the report, and to authorize a recovery under the second finding and estimate of damage by the referees.

The judgment of the county court is affirmed.