## VLIET VS. SHERWOOD.

|     |     |
| --- | --- |
| 35 | 229 |
| 109 | 569 |

|     |     |
| --- | --- |
| 35 | 229 |
| 53 LRA | 901 |

UPPER AND LOWER MILLS — *Right of lower mill to flow of water.* (1) *Easement must be for benefit of dominant estate alone.* (2, 3) *User, as ground of prescription, must be adverse.* (4) *Complaint held not to show adverse use of water.* (5) *Rights of riparian owner.*

1. It is of the essence of an *easement* that it exists for the benefit of the *dominant* tenement alone.

2. A right founded on *prescription* must be one which has been claimed and maintained in *hostility* to the right of the person against whom it is set up.

3. Thus, to acquire a prescriptive right to a certain flow of water from the dam' and reservoir of another, the *user* upon which such · right is based must be *adverse* to the owner of the dam and reservoir, and not merely an incidental advantage arising from a flow of water maintained by him for his own benefit in the use of his own power.

4. The complaint avers, in substance, that defendant, more than twenty years before the commencement of the action, erected a dam and mills on a certain stream, about half a mile from the outlet of a certain lake; that plaintiff has maintained for twenty years a lower mill on the same stream; that water equal to a specified daily average has flowed to plaintiff's mill from defendant's dam and reservoir during the whole of that time; that defendant's mill having been destroyed by fire, etc., a much smaller amount of water is now permitted to pass his dam, and not sufficient to run plaintiff's mill, to her great damage; and that she has repeatedly requested defendant to let the water flow to her mill, as it had theretofore flowed, and as he had always permitted it to flow for the twenty years whenever demanded by her. *Held,* that these averments do not show a twenty years user of such water *adverse* to the defendant, and do not establish a *prescriptive* right.

5. The plaintiff, as riparian owner, has a right to the flow of the water of said stream, in its natural current, undiminished in quantity, to her mill; but the present action does not proceed upon that right.

APPEAL from the Circuit Court for *Green Lake* County.

Action for the recovery of damages alleged to have been sustained by plaintiff, a mill owner, on account of defendant's withholding the usual supply of water from his reservoir situated above plaintiff's mill; and also for an injunction. Plaint-

iff claimed a prescriptive right to the flow of water from defendant's reservoir, growing out of twenty years user. The allegations of the complaint are fully stated in the opinion. A demurrer to the complaint as not stating a cause of action was overruled; and the defendant appealed from the order.

*Gillet & Taylor*, for appellant, argued that plaintiff's case rested upon the proposition, that if a party constructs a reservoir upon a stream and maintains it for more than twenty years, he is bound to maintain it forever afterwards for the benefit of the lower mill owners. The only right which the owner of land through which a stream flows has to the waters of such stream, is to make a reasonable use of them as they pass through his land, and, as against those higher up the stream, that they shall permit the waters to flow naturally, subject only to their own reasonable use. *Gould v. Boston Dock Co.*, 13 Gray, 442 ; Angell on W. C., § 90. See also *Timm v. Bear*, 29 Wis., 254; *Patten v. Marden*, 14 id., 473; *City of Springfield v. Harris*, 4 Allen, 496. If the owner of the land claims any other right in the waters of the stream than this right to their natural flow, it must be acquired in some lawful manner, and it can be gained only in two ways, viz., by express grant from other owners, or by an adverse and hostile assertion and maintenance of the right for more than twenty years. But a right founded on prescription must be a right which has been claimed and maintained in hostility to the right of the person against whom it is set up. A lower mill owner can obtain no right to the use of the flowing water by prescription against the upper mill owner upon the same stream, where such use has not been hostile to the right of the upper owner, and where it has always been with his assent and not contrary or adverse to his rights. *Arnold v. Stevens*, 24 Pick., 106 ; *Ricard v. Williams*, 7 Wheat., 109 ; *Brandt v. Ogden*, 1 Johns., 156; 21 Conn., 86; 25 id., 381; 26 Ind., 354. All prescriptive rights are, in presumption of law, dependent upon a grant from the party against whose interest the right is claimed. Angell

on W. C., § 201. The whole doctrine of right by prescription is, that the right is adverse to the rights of the party against whom it is asserted, and that the exercise or possession of such adverse claim has been so long continued that the law presumes a grant of the right from the one party to the other. See also *Arnold v. Stevens*, 24 Pick., 106, 111 ; *Acton v. Blundell*, 12 M. & W., 324 ; *Lasala v. Holbrook*, 4 Paige, 1 69 ; 4 Pick., 22 ; 9 id., 251 ; 16 id., 241, 247 ; *Felton v. Simpson*, 11 Ired., 84 ; 2 Washb. R. P. (3d ed.), 296–7, 300–303 ; *Brace v. Yale*, 10 Allen, 444 ; *Pitts v. Lancaster Mills*, 13 Met., 156.

*Hamilton & Sutherland, contra*, contended that a broad distinction existed between acquiring a right to an easement by prescription, and acquiring title to land by prescription. An easement, such as the right to use running water, in no case presumes a title to the thing acquired, but simply to the use of it. Hence the courts have almost universally held that twenty years exclusive enjoyment of water in any particular manner affords a conclusive presumption of right in the party enjoying it. *Bealey v. Shaw*, 6 East, 208 ; 3 Kent's Com. (5th ed.), 441 ; *Belknap v. Trimble*, 3 Paige, 577. And it may be stated as a general proposition of law, that if there has been an uninterrupted use and enjoyment of an easement in a stream of water in a particular way for more than twenty years, it affords conclusive presumption of right in the party who has thus enjoyed it, provided such use and enjoyment be not by authority of law, or by or under some agreement between the owner of the inheritance and the party enjoying the right. Washburn on Easements, 106, and authorities there cited. See also *Strickler v. Todd*, 10 Serg. & R., 63, 69. But we insist that our claim is adverse, within the strictest definition of the word. Where one uses an easement whenever he sees fit, without asking leave and without objection, such user is adverse, and an uninterrupted enjoyment for the requisite time is a title which cannot afterwards be disputed. *Garrett v. Jackson*, 20 Pa. St., 331 ; *Pierce v. Cloud*, 42 id., 102, 113, 114 ; Washburn on Easements (2d

ed.), 130. And if there has been the use of an easement for twenty years unexplained, it will be presumed to have been under a claim of right, and adverse, and will be sufficient to establish a title by prescription, and to authorize the presumption of a grant, unless contradicted or explained. *Miller v. Garlock*, 8 Barb., 153; *Williams v. Nelson*, 23 Pick., 141, 147; *Blake v. Everett*, 1 Allen, 248; *Hammond v. Zehner*, 21 N. Y., 118.

COLE, J. The plaintiff rests her case entirely upon the prescriptive right which she claims she has acquired to the flow of the water in the stream, from the defendant's reservoir to her mill, in the same manner it has been accustomed to flow for the past twenty years. This is the foundation of the action. She does not base her claim to the relief asked upon the ground that she as riparian owner is entitled to the natural flow of the water through her lands, which is interfered with by the defendant; nor upon the ground that the defendant does not permit as much water to pass his dam as would naturally flow in the stream were there no dam maintained by him. There is, it is true, an allegation that the defendant wrongfully, unjustly, unlawfully and unnecessarily detains and withholds the waters of the lake from her mill; but this averment, in the connection in which it is used, evidently refers to the fact that the defendant does not let the water flow from the reservoir which he built and has maintained, in the same quantities he was accustomed to do when he was operating his mills.

The whole case, therefore, would seem to be narrowed down to the rights of the plaintiff arising upon these facts:

The defendant and his grantors, in 1845 or 1846, erected a dam on the outlet of Green Lake, about a half mile below the lake, for the purpose of creating a water power by ponding the waters of the lake, and have from time to time built mills and machinery thereon, which were propelled by the power

thus created. When all the mills and machinery which were erected on this power which the defendant created and owned, were in operation, it required, to propel the same, two thousand square inches of water taken from the bottom of the dam or head; and from the erection of the dam up to the 16th day of September last, it is alleged that there has passed on an average daily through the defendant's gates, and through the leakages of his gates and dam, what would be equivalent to six hundred square inches of water taken from the bottom of his head in a continual flow.

The plaintiff and those under whom she claims have for upwards of twenty years been the owners of a grist and flouring mill situated on the outlet of Green Lake, about three-fourths of a mile below the dam and mills of the defendant, and she has used the waters as they flowed to her mill through the gates of the defendant's mill and the leakages of his gates and dam, to propel her mill; and she has been enabled to run her mill to its fullest capacity, during the twenty years, with one-half the water used by the defendant in operating his mills and machinery.

The defendant's mills and machinery erected on his power have been destroyed by fire, or have gone to decay, except a planing mill, which is seldom used, and when used it does not pass more than half water enough to run one run of stone in the plaintiff's mill; and since the burning of the defendant's mill, water only sufficient to enable the plaintiff to run one run of stone one-eighth of the time has been permitted by the defendant to pass his dam or reservoir to the plaintiff's mill, and this in such irregular quantities and at such irregular times that the plaintiff is not able to do much grinding, as she has to use the water in her pond, which she exhausts in a short time, and then has to wait until the pond again fills from the water flowing down the stream. It is also alleged that the defendant, since the burning of his mill, has taken extreme pains to tighten all the leaks in his dam, so that but little in

that way comes to the plaintiff's mill; but, as already remarked, it is not claimed that he does not permit as much water to pass his dam as would flow in the natural stream had he no dam or reservoir upon his land. The plaintiff alleges that she has suffered great loss and damage by reason of the defendant's withholding the waters in his reservoir, and that she has repeatedly requested him to let them flow to her mill as they had theretofore flowed, and as he has always permitted them to flow for the past twenty years whenever demanded by her or by those in the ownership of her mill, so as to supply the immediate wants of the mill.

These are, in substance, the material allegations of the complaint upon which the plaintiff's prescriptive right to have the waters flow from the reservoir to her mill is founded. And the question is, Do they show that the plaintiff has acquired the right by prescription to the flow of the waters from defendant's reservoir to her mill in the same manner and in like quantities as they were accustomed to flow when the defendant's mill and machinery were in full operation? It seems to us not. If she has acquired that prescriptive right, it grows out of the fact that the defendant has created a reservoir upon his own land which was filled by the waters of the lake and which he has maintained for more than twenty years, during which time he has managed and controlled the water in the reservoir for the operation of his mills, and has discharged it from his dam and gates in greater or smaller quantities and at other times than it would naturally flow down the stream, which the plaintiff has had the benefit of, and has used for the purposes of working her own mill. But in this she has exercised no right, nor made any use of the water, hostile to the right of the defendant. She appropriated and used the water as it flowed from the defendant's dam after he had used it for the operation of his own mills, or had all the beneficial use and enjoyment of it which water was capable of affording. A right founded upon prescription must be a right which has

been claimed and maintained in hostility to the right of the person against whom it is set up. It is said that the right of the plaintiff to have the water flow from the defendant's reservoir to her mill as it has flowed for twenty years, is an incorporeal hereditament, or an easement as defined in the law. But it is of the essence of an easement that it exists for the benefit of the dominant tenement alone. *Mason v. Shrewsbury, etc., R'y Co.*, Law Reports, 6 Queen's Bench, 577. Says BIGELOW, C. J., in delivering the opinion of the court in *Brace v. Yale*, 10 Allen, 441–444, "It is doubtless true that to establish the presumption of a right or servitude or easement over the land of another, or a modification or change of corporeal hereditament thereto belonging, it must appear that the use or enjoyment has not been permissive only. It must be shown to have been under a claim of right, and inconsistent with or contrary to the interests and adverse to the title of the original owner of the land; that is, it must have been such a use that it is difficult or impossible to account for it except on the presumption of a grant from the original owner. If the use or enjoyment has been consistent with the existence of the right or title of the latter, no such presumption arises. Thus, the erection of a dam across a stream of water to raise a head for the purpose of driving wheels and machinery in a mill, and the cutting of canals, sluices and water-ways to conduct, apply and discharge the water, although they may change in some degree the natural flow of the stream and cause a temporary obstruction to the passage of the water, yet, if they do not essentially affect the reasonable use of the current by riparian proprietors above and below for similar purposes, would not be inconsistent with the rights of such proprietors in the stream, and could not be deemed to confer any right or take away any title or privilege. So, too, the erection of a dam for the purpose of forming a reservoir by flowing a large tract of land, by which the water would be obstructed only until such reservoir should be filled, and would then resume its natural flow,

could not be deemed to be adverse or inconsistent with the rights of other proprietors below on the same stream. The obstruction in such case would be only slight and temporary, and would afford no ground for a presumption that any right of others to the use of the stream had been thereby impaired or lost. *Pitts v. Lancaster Mills*, 13 Met., 156." These remarks, as well as the whole discussion in this case as found in 4 Allen, 393; 97 Mass., 18; and 99 id., 488, are very instructive, and have a strong bearing upon the question we are considering. See also *Gould v. Boston Dock Co.*, 13 Gray, 442; *Felton v. Simpson*, 11 Iredell's Law, 84.

In this case the plaintiff doubtless derived incidentally a benefit or advantage from the erection of the reservoir and the ponding of the waters in the lake, so long as the defendant operated his mills on the power he had created. But her use of the water after he had discharged it from his gates and dam was not inconsistent with or adverse to the use which he made of it while working his machinery. Each was merely exercising the right of a riparian proprietor in the use of the water, and in a manner consistent with the equal and common right of others. Suppose the defendant's dam or reservoir should be washed away and destroyed, will it be claimed that the plaintiff has the right to insist upon his rebuilding it for her benefit? Has she acquired the right to a continuance of the reservoir and the incidental advantages arising to her from it, so that the owner cannot abandon it? If she has acquired a prescriptive right to be supplied with waters from the reservoir " in the same manner, at the same times and in like quantities as they have so flowed to her said mill for the past twenty years and upwards," the defendant cannot abandon the work, but must always keep up the reservoir for her benefit. For it is a fundamental principle that an easement exists for the benefit of the dominant owner alone. The plaintiff unquestionably has the right to the flow of the water, undiminished in quantity, down the stream in its natural current to her mill.

Vliet vs. Sherwood.

She does not complain that she is deprived of that right. But her claim, as forcibly stated by the defendant's counsel, comes to this: If a party constructs a reservoir upon a stream for his own convenience and use, and maintains it for more than twenty years, he is bound in law to maintain it forever afterwards for the benefit of the lower mill owners. It seems to us this claim cannot be sustained upon the authorities in regard to the rights of riparian proprietors. We see no fact in the complaint which gives the plaintiff the right to object if the defendant sees fit to abandon the reservoir, should it become onerous for him to maintain it, or should it cease to be beneficial to him.

There is an allegation in the complaint that the defendant, whenever the demand was made, has opened his gates and permitted the waters of the lake to flow to the plaintiff's mill to supply the immediate wants thereof, and that such a demand has been repeatedly made during the last twenty years. But this does not show that the defendant supplied the water from the reservoir as of right, and because the plaintiff was rightfully entitled to it. The defendant might have permitted the water to flow as demanded through a spirit of accommodation, and without intending to acknowledge any right on the part of the plaintiff. From so equivocal an act we cannot presume an adverse user or enjoyment.

For these reasons we think the demurrer to the complaint should have been sustained.

*By the Court.*—The order overruling the demurrer is reversed, and the cause remanded for further proceedings according to law.