JAMES B. LAWRIE, ET AL. *v.* W. H. SILSBY, ET AL.

October Term, 1903.

Present: ROWELL, C. J., TYLER, MUNSON, STAFFORD, and HASELTON, JJ.

Opinion filed February 13, 1904.

*Riparian Rights—Prescription—Question of Fact—Corporation—Organization—Articles of Association—Signing—Capacity to Sue.*

The presumption of a grant from long continued enjoyment arises only where the person against whom the right is claimed could have lawfully interrupted or prevented the exercise of the supposed right.

Persons who, for more than forty years, under a claim of right, have taken water by a pipe from a brook on a riparian lot to their sev-

eral nonriparian farms, have not thereby acquired the right to do so as against an upper riparian owner.

Persons who, for more than forty years, under a claim of right, have taken water by a pipe from a brook on a riparian lot to their several nonriparian farms, have acquired a prescriptive right to do so as against the owner of said riparian lot, although the water was taken, in the first instance, by license of said owner, it appearing that such license was unlimited in point of time.

The nonriparian grantees of a riparian owner of the right to take water from a brook for nonriparian use can maintain an action in their own name against an upper riparian proprietor for polluting the water to their damage.

Riparian owners are entitled, as against each other, to a reasonable use of the water of the stream.

Whether the use of the water of a stream by a riparian owner, is reasonable, is a question of fact.

Since Chapter 85, of the Compiled Statutes provided for incorporation by written articles "subscribed by the members," such subscription was a condition precedent to incorporation.

Since Chapter 85 of the Compiled Statutes provided that corporations created thereunder, "when organized," should be capable to sue and be sued; unless organized, such corporation cannot be sued, though its articles are subscribed by its members.

APPEAL IN CHANCERY, Washington County. Heard at Chambers on bill, answer, master's report, and exceptions thereto. *Start,* Chancellor. Decree, *pro forma* for the orators. The defendants appealed.

The master reported that prior to the year 1854, the then owners of the property in the Ox Bow District joined together in laying an aqueduct from the stream at a certain point in the Lawrie lot to their respective farms and buildings, and shared in the expense and ownership thereof, and thereby conveyed water from said stream to said farms and buildings for domestic and farm uses; that said farms and buildings were thereafterwards so supplied with water, for the purposes named, until, in the year 1854, the owners of said aqueduct wishing to have their respective rights better defined and

understood and enforceable in law between themselves, their heirs and assigns, did then adopt articles of association under the laws of this State. The master sets forth the articles of association so adopted, but they do not appear to have been signed.

On the 17th day of October, 1887, the defendant, William H. Silsby, became the sole owner in fee of the Hale lot, which is situated immediately north of the Lawrie lot, and between that time and the year 1890, said Silsby cut and removed from the Hale lot most of the timber growing thereon and converted the land into pasture in which he afterwards kept thirty to forty head of cattle and horses, all of which had access to the brook in question, which flowed south through the Hale lot and across the Lawrie lot.

On the 21st day of November, 1894, said Silsby leased for the term of ninety-nine years to the defendants, E. T. Bailey and A. W. Silsby, a portion of the land lying on said stream running through the Hale lot to be flowed and used for a private fish pond and for trout only. The lessees were to control the land for a distance of thirty feet back from the water's edge all around said pond. They also had the right to control the stream running into said pond up as far as they might desire towards its source for the purpose of hatching and protecting trout therein.

In the fall of 1894 said lessees erected a dam across said stream near the southerly boundary of the Hale lot, and by means of the same the water has been set back and forms a pond, the area of which is between six and seven acres, with an average depth of over six feet, and containing, in round numbers, nearly 14,000,000 gallons of water. In the construction of said dam a spillway was provided at its top through which it was expected that the natural stream would

flow after the dam was once filled, but much of the time since
its completion, through loss of water from the pond by leak-
age of the dam and evaporation, the surface of the water
has been considerably below the spillway, and at such times
the water that has flowed from the dam in the natural bed of
the stream below that point, has been only such water as has
escaped through said leakage.

The master finds that by reason of the storage of water
in said pond, the water that flows therefrom has at all times
since the dam was completed been decidedly inferior to the
water in the brook; that in wet seasons, when the dam over-
flows, the water is of better quality than in drier seasons when
it does not overflow, and when by standing in the pond it
becomes to a greater or less extent stagnant. The opinion
states the other facts.

*Smith & Smith* for the orators.

The orators have the right to have the water of the
stream continue to flow in its natural channel unimpaired in
quality and undiminished in quantity to any material degree,
except to satisfy natural wants. Kent. Com., Vol. 3, 439;
*Chapman* v. *Rochester,* 1 L. R. A. 296; *Bealey* v. *Shaw,* 6
East. 208; *Evans* v. *Merriweather,* 4 Ill. 495, 38 Am. Dec.
106.

After a stream has run in an artificial channel for the
length of time required to gain title to land by adverse pos-
session, the proprietors on the banks of the artificial stream
have all the rights which they would have if they were riparian
proprietors on a natural stream. *Shepardson* v. *Perkins,* 58
N. H. 354; *Major* v. *Chadwick,* 11 Ad. & El. 571, 39 E. C. L.
169; *Watkins* v. *Peck,* 13 N. H. 360; *Williams* v. *Wadsworth,*
51 Conn. 277; *Sutcliffe* v. *Booth,* 32 L. J., Q. B. 136.

Rights in a stream may originate in grant or in prescription, and these may be acquired either by riparian or non-riparian proprietors. Angell on Watercourses, § 224; Kent Com. Vol. 3, pp. 441-444; *Shrewsbury* v. *Brown,* 25 Vt. 197; *Tracey* v. *Atherton,* 36 Vt. 503; *Perrin* v. *Garfield,* 37 Vt. 304; *Ford* v. *Whitlock,* 27 Vt. 265; *Wilcox* v. *Wheeler,* 47 N. H. 488; *Finch* v. *Resbridger,* 2 Ver. 390; *Matthewson* v. *Hoffman,* 6 L. R. A. 349; *Woodbury* v. *Short,* 17 Vt. 387; *Belknap* v. *Trimble,* 3 Paige 577; *Murchie* v. *Gates,* 78 Me. 300.

Equity is the proper forum to abate a nuisance. Enc. Pl. & Pr., Vol. 14, 1118; Am. & Eng. Enc. Law, Vol. 10, 844; *Ullbricht* v. *Eufaula Co.,* 4 L. R. A. 572; *Barton* v. *Union Cattle Co.,* 7 L. R. A. 457; *Canfield* v. *Andrews,* 54 Vt. 1; *Coffin* v. *Cole,* 67 Vt. 226.

*Dunnett & Slack,* and *R. M. Harvey* for the defendants.

The bill should have been dismissed for want of proper parties. The water system, as the report finds, is the property of the Oxbow Aqueduct Co. Said corporation is a necessary party. Story, Eq. Pl. § 72; *Poore* v. *Clark,* 2 Atk. 515; *Sturges & Douglass* v. *Knapp,* 31 Vt. 1; *Shaw* v. *R. R. Co.,* 5 Gray 162; *Stevens* v. *Austin,* 3 Met. 474; Thompson, Corp. § 4471; *Smith* v. *Hurd,* 12 Met. 371; *Taylor* v. *Homes,* 127 U. S. 489; *Detroit* v. *Dean,* 106 U. S. 537; *Lane* v. *School Dist.,* 10 Met. 462; *Byers* v. *Coal Co.,* 14 Allen 470; *Hoe* v. *Wilson,* 9 Wall. 501; *Smith* v. *Bartholomew,* 24 Vt. 369.

None of the orators are riparian owners except Lawrie. Therefore only Lawrie has any of the rights incident to riparian ownership. Gould on Waters, § 148; *City of Emporia* v. *Soden,* 37 Am. Rep. 265; *Stein* v. *Burden,* 60 Am. Dec. 465; *Gardiner* v. *Newburg,* 7 Am. Dec. 526; *Platt* v. *Johnson,* 8 Am. Dec. 233.

The defendants have injured no one, they have merely exercised the rights which the law has given them. *Tyler* v. *Wilkinson,* 4 Mason 400; *Gould* v. *Boston Duck Co.,* 13 Gray 442; *Dumont* v. *Kellogg,* 18 Am. Rep. 102; *Pitts et al.* v. *Lancaster Mills,* 13 Met. 156; *Davis* v. *Gretchell,* 50 Me. 602; *City of Springfield* v. *Harris,* 4 Allen 494; *Barre Water Co.* v. *Carnes,* 65 Vt. 626; *Wood* v. *Edes,* 2 Allen 578; *Snow* v. *Parsons,* 28 Vt. 459; *Barnard et al.* v. *Shirley,* 135 Ind. 547; *Hazelton* v. *Case,* 5 Am. Rep. 715; *Pool* v. *Lewis,* 5 Am. Rep. 526; *Thurber* v. *Martin,* 2 Gray 394.

Rowell, C. J.   The orators, who take water by a pipe from a brook on what is called the Lawrie lot, and conduct it to their several nonriparian farms and buildings for domestic and farm uses, have not thereby acquired a prescriptive right to do so as against the defendants, who own the riparian land next above the Lawrie lot, called the Hale lot, though the water has been taken long enough in point of time, for the law of this State is, as well as of many if not most of the other states, and of England, that the presumption of a grant from long-continued enjoyment arises only where the person against whom the right is claimed could have lawfully interrupted or prevented the exercise of the subject of the supposed grant. *Shumway* v. *Simons,* 1 Vt. 53; *Norton* v. *Volantine,* 14 Vt. 239; *Hoy* v. *Sterrett,* 2 Watts. 327, 27 Am. Dec. 313; *Holsman* v. *Boiling Springs Bleaching Co.* 14 N. J. Eq. 335; *Vliet* v. *Sherwood,* 35 Wis. 229; *Nelson* v. *Butterfield,* 21 Me. 220; 28 Am. & Eng. Ency. Law, 1st ed. 1005; *Stockport Waterworks Co.* v. *Potter,* 3 H. & C. 300, 325; *Chasemore* v. *Richards,* 7 H. L. Cas. 349, 370; *Webb* v. *Bird,* 13 C. B. N. S. 841; *Sturges* v. *Bridgman,* 11 Ch. D. at page 855.

Here, neither the defendants nor their predecessors in title could lawfully have interrupted nor prevented the taking of the water, as it does not appear that it infringed their rights.

*Murchie* v. *Gates,* 78 Me. 300, 4 Atl. 698, and *Holker* v. *Porritt,* L. R. 8 Ex. 107, and L. R. 10 Ex. 59, on which the orators rely to support their claim of a prescriptive right, are not in point, for there natural streams had been divided so that part of the water flowed in artificial channels, and the law of natural watercourses was applied to the artificial channels, and the plaintiffs were regarded as riparian proprietors the same as though they abutted on the natural branch of the stream; though in the Exchequer Chamber the judgment in *Holker* v. *Porritt* was affirmed on different ground.

The orators, therefore, having no prescriptive right against the defendants, must stand on whatever other rights they have against them. The orator, James B. Lawrie, owns the Lawrie lot, and has ever since 1870, and must stand on his right as such owner. The defendants do not question the right of the other orators as against Lawrie to take the water as they do, but they say nothing as to the legal quality of the right, and the orators claim that in the circumstances it will be presumed to rest in grant, and we are inclined to think that this is the true view of the matter. It appears from the report that prior to the year 1854, the then owners of the orators' farms and buildings, one of whom was H. N. Chamberlin, the then owner of the Lawrie lot and of the said Lawrie's farm, joined together in laying the aqueduct in question, and thereby took water from the brook to their respective farms and buildings for domestic and farm uses, and shared in the expense and ownership of said aqueduct; that said farms and buildings were thus supplied with water until the year 1854, when the owners of said aqueduct, wishing to

have their rights therein better defined and understood, and better enforceable among themselves, their heirs and assigns, adopted written articles, purporting to be under ch. 85 of the Comp. Sts., whereby they undertook to form themselves into a corporation under the name of the Ox Bow Aqueduct Company, for the purpose of bringing water by aqueduct from the hill westerly of the "Ox Bow" where most convenient, each agreeing to pay his proportion of the expense, and the cost of keeping in repair to the point where each took the water from the main branch, each putting in and maintaining his own branch, and whereby the number of shares that each, or his assigns, should be entitled to, was fixed, and subjected to assessment from time to time for building and repairing the aqueduct.   And water has ever since been, and still is, taken from said brook by means of said aqueduct, to the farms and buildings of the orators for the purposes and uses aforesaid.

Although it appears clearly enough that water was thus taken in the first instance by license of Chamberlin, the then owner of the Lawrie lot, yet it appears with equal clearness that that license was unlimited in point of time, and so understood by all the parties thereto, and that the water has been taken and used for all these forty years and more under a claim of right.   This being so, the fact that the use began by permission did not prevent the acquisition of a prescriptive right to take as against the owners of the Lawrie lot. *Arbuckle* v. *Ward,* 29 Vt. 43; *Blaine* v. *Ray,* 61 Vt. 566, 18 Atl. 189.

But is this prescriptive right sufficient to enable the orators, other than Lawrie, to maintain this bill in their own names?   It is not, unless a grant to them from an owner of the Lawrie lot would be sufficient, for they can prescribe for

no more than he could grant, as prescription is based upon a supposed grant. This raises the question whether a nonriparian grantee of a riparian proprietor, of a right to take water from the stream for nonriparian use, can maintain an action in his own name against an upper riparian proprietor for polluting the water of the stream to his damage. It has been expressly held in England that he cannot; that though the grant is good against the grantor, it does not enable the grantee to sue in his own name a riparian proprietor other than his grantor for interfering with his right. This is put upon the ground that the rights of a riparian proprietor in respect to the water are derived entirely from his possession of land abutting on the stream, and are so annexed to the soil that they cannot be granted away apart from the land as far as other riparian proprietors are concerned. *Stockport Waterworks Co.* v. *Potter,* 3 H. & C. 300; *Ormerod* v. *Todmorton Mill Co.,* L. R. 11 Q. B. 155 Cf.; *Kensit* v. *Great Eastern Railway* Co., 27 Ch. D. 122. In *Nuttall* v. *Bracewell,* L. R. 2 Ex. 1, it was held that the plaintiff was a riparian proprietor in respect of a goit; but Pollock, C. B., and Channell, B., adhered to the ground of their judgment in the *Stockport Waterworks* case, and said that if a riparian proprietor is bound to abstain from interfering with nonriparian grantees of riparian proprietors, as well as from interfering with riparian proprietors themselves, it would well nigh destroy his rights altogether, for that can hardly be called a right that is subject to an indefinite restriction, unascertained and practically unascertainable. They considered that the rights of a riparian proprietor with respect to the stream are limited only by the rights of persons in a similar or an analogous position with themselves. The Master of the Rolls said in *Ormerod* v. *The Todmorden Mill Co.,* that though the law of flowing

water is a part of the common law of England, it exists only as among riparian proprietors, and does not extend to those whose lands do not abut on streams and rivers.

But in this country it is held in some jurisdictions that an incorporeal right to water may be granted in gross or made appurtenant to other land, and that the grantee may sue in his own name for a disturbance of his right. Thus, in *St. Anthony Falls. Water Power 'Co.* v. *The City of Minneapolis,* 41 Minn. 270, a riparian owner of part of an island in the Mississippi River just above the Falls, sold other land of his not bordering on the river, and with it granted a right to take water from the river for use thereon, which the grantees did by means of a canal, and the defendant succeeded to their rights. It was objected that as the city had no land abutting on the river, it was not a riparian owner, and had no riparian rights. But the court said it was entirely immaterial whether the defendant's rights were riparian or conventional; that it had rights, for the disturbance of which it had a right of action; that it was unimportant whether it was held that the provision in the grantor's deed in regard to a canal amounted to a division of the river into two courses, or whether, what seemed to be more in accordance with principle and common sense, it was held that a riparian owner may grant a part of his estate not abutting on the stream, and, as appurtenant thereto, a right to draw water from the stream for use on such land.

In *Goodrich* v. *Burbank,* 12 Allen, 459, it was held that an assignable right in gross to take water from a spring on land conveyed could be reserved to the grantor, his heirs and assigns. The court said that water itself may not be the subject of property, but that the right to take it, and to have pipes laid in the soil of another for that purpose, and to

enter upon the land of another to lay, repair, and renew such pipes, is an interest in the realty, assignable, discernable, and devisable; that there are many cases in Massachusetts recognizing the right to take water from a millpond as a distinct and substantive right, without restriction as to its use at any particular place; and that it was unable to distinguish between a right to take water from a pond by means of a canal for the purposes of power, and a right to take water from a spring for domestic purposes.   Judge Curtis said in *The Lonsdale Co.* v. *Moies,* 21 Monthly Law Reporter, 658, a case in the U. S. Circuit Court concerning water rights in the Blackstone River, that incorporeal rights may be inseparably annexed to a particular messuage or tract of land by the grant that creates them, or may be granted in gross, and afterwards, for the purpose of enjoyment, be annexed to a messuage or land, and then severed therefrom by a conveyance of the messuage or land without the right, or a conveyance of the right without the land.   This court said substantially the same thing in *Rood* v. *Johnson,* 26 Vt. 64, 71, when construing a grant of a water right in a river, thus: "The land is conveyed, and the grantor might, had he chosen, have reserved the use of all the water to himself, or he might have conveyed the use of all or a part of it as a mere incorporeal hereditament, and retained the fee of the land in himself, notwithstanding the maxim that one cannot convey the water separate from the land."

In *Poull* v. *Mockley,* 33 Wis. 482, a grant to one and his heirs and assigns forever of a right to take water from a well on the grantor's land, was held to create an easement in gross, and to be assignable by the grantee.   The court followed the Massachusetts cases, and said it saw no substantial reason why such an easement is not assignable.

In *Hill* v. *Shorey,* 42 Vt. 614, it was held that a reserva-tion in a deed, "of the right of taking all the waste water as it now runs into the tub on said premises by aqueduct" from a spring thereon, was a reservation of an interest and a right in the spring itself to the extent named. It is said in Washburn on Easements, 4th ed., 14 and 15, that where water is, as it may be, the subject of sale in gross as a thing of value, it does not seem to be violating any rule of law to regard it as a species of *profit a prendre,* and therefore a subject of separate grant; and that although it might be difficult to raise a prescriptive right of inheritance in the privilege of an aqueduct by personal enjoyment independent of its use in connection with some estate, and although a right to the enjoyment of water from a well or a spring or a river may be gained by custom, since no part of the soil or freehold proper is thus carried away any faster than it is ordinarily supplied from natural sources, yet, after all, it is an interest in land; and that, as said in *Goodrich* v. *Burbank,* above cited, there is no distinction between a right to take water by a canal from a pond for the purposes of power, and the right to take it from a spring in a pipe for domestic purposes.

It would seem to follow that if the right to take water from a spring or a stream is an interest in the land itself, that such right is grantable as a right in gross or appurtenant, and is assignable, descendable, and devisible; and such, we think, has always been the view entertained and practiced upon in this State. Situated as we are, with so many springs and streams of pure water on which our people are largely dependent for their domestic needs, we think this doctrine best adapted to our local situation and circumstances. We hold, therefore, that the other orators, as well as Lawrie, can maintain the bill in their own names if the defendants have

infringed their rights.  But what are their rights as against
the defendants?

Each riparian proprietor has a right to use the water of
the stream for his own natural wants, and for the like wants
of his family and his beasts.  Many of the authorities say
that for these purposes he may use all of it if necessary.  But
the logical result from the correlative rights of riparian pro-
prietors would seem to be that each must use his own right
so as not to deprive the others of an equal enjoyment of their
same rights.  And this is the view taken in *Chatfield* v. *Wil-
son,* 31 Vt. 358, and *Barre Water Co.* v. *Carnes,* 65 Vt. 626,
27 Atl. 609.  The same view is taken in *Elliot* v. *Fitchburg
Railroad Co.,* 10 Cush. 191.  It would seem to follow that
reasonable use is the only limit that can be set to the exercise
of these rights.  This is the rule in New Hampshire, where
they repudiate the English doctrine, and hold it to be a
question of fact whether the use of the water made by a ripar-
ian owner for his own purposes or for sale to others for non-
riparian purposes is, in all the circumstances, a reasonable use.
*Gillis* v. *Chase,* 67 N. H. 161, 31 Atl. 18.  Sometimes the law
will say what is a reasonable use.  Thus, they hold in New
Jersey that the sale of a right to take water for use on non-
riparian lands is unreasonable as matter of law, if thereby
another riparian proprietor sustains palpable damage.  *Hig-
gins* v. *Flemington Water Co.,* 36 N. J. Eq. 538.  But if the
use is lawful and beneficial, it must be deemed to be reason-
able, and not an infringement of the rights of other riparian
owners to whom it occasions no actual and perceptible dam-
age.  *Elliot* v. *Fitchburg Railroad Co.,* 10 Cush. 191, 197.
There a riparian owner granted to the defendant a perpetual
right to divert all the water of the stream to its non-riparian
premises, where it supplied its locomotive engines with water.

The court said that the grantor and the grantee together held the whole right, and that the case was to be considered as though the defendant owned the land. This case is like that in this respect. Here the taking of the water by the orators is lawful and beneficial, and does not alter the rights of the defendants nor do them any actual and perceptible damage. Therefore their use must be deemed reasonable as to the defendants. But the use the defendants are making of the water is found to damage the orators to some extent, and therefore it cannot be said as matter of law, in the circumstances, to be a reasonable use. Hence it is a question of fact for the master, and he has not passed upon it, and the case will have to go back to him.

We are asked to deny an injunction because the damage is so small to the orators, and growing smaller all the time, and the master thinks that the water in the defendants' pond, the creation of which is complained of, may purify itself from objectionable taste and odor in ten years, though probably a longer time will be required to render it tasteless and odorless as it leaves the pond; and because an injunction will hurt the defendants more than it will help the orators. But as the case has got to go back for further findings, this question is reserved.

It is objected that the bill cannot be maintained because not brought in the name of The Ox Bow Aqueduct Company. But this objection cannot be sustained, because it does not appear that the company was ever incorporated and organized. The statute provided that associations thereunder should be formed by written articles, "subscribed by the members." It fairly appears that these articles were not subscribed by the members, for the report professes to set out the articles in their very words, and no signatures are attached. Substantial compliance with the terms of a general incorporation

law is a prerequisite to the formation of a corporation under it. 1 Morawetz, Corp. 2d ed., § 27.

Again, the statute provided that corporations created thereunder, "when organized," should be capable to sue and be sued. It does not appear that said association was ever organized, and therefore it would have no capacity to sue even though the articles had been subscribed.

*Reversed and remanded with mandate.*