## DAVID DUTTON *v.* O. N. STOUGHTON.

May Term, 1905.

Present:   ROWELL, C. J., TYLER, MUNSON, HASELTON, and POWERS, JJ.

Opinion filed November 26, 1906.

*Prescriptive Rights — Dams — Overflowing Lands — When Prescription Begins to Run—Mere Claim of Right— Effect—Evidence—Town Clerk's Minute on Land Records.*

The burden of establishing a prescriptive right is on him who asserts it.

No prescription begins to run until a right of action accrues; and no right of action accrues until an injury is inflicted.

The defendant's mere *claim* of a right to maintain his dam at a stated height, though persisted in, after notice thereof to the orator, for the time requisite to create a prescriptive right, would not result in the defendant's having the right to maintain his dam at that height, as against the orator whose lands would be thereby flooded.

On the land records of the town where defendant's water privilege is situated, and immediately following the record of the deed of one of defendant's ancient lineal grantors, is the following memorandum in the hand of and attested by the then town clerk: "The dam on said privilege rebuilt August, 1854, by L. B. Wright, 7 feet 4 inches in height from a bolt in the rock about or near the middle of said dam." *Held*, in a suit in equity to restrain defendant from maintaining said dam at such a height as to flood the orator's land, that said memorandum is only an unofficial statement of the town clerk,—a mere narrative of a past transaction, which gained nothing as evidence by being indorsed on said records.

APPEAL IN CHANCERY, Windsor County.   Heard at Chambers, March 21, 1905, on pleadings, master's report and exceptions thereto, *Watson,* Chancellor. Exceptions overruled and decree perpetually enjoining the defendants "from erect-

ing or maintaining a dam or other obstruction in the stream below the orator's said lands, which will cause the waters of said stream to set back and flow upon the lands of the orator." The defendants appealed. The opinion fully states the case.

*M. M. Wilson* and *R. M. Harvey* for the orator.

*J. D. Denison* and *Tarbell & Whitham* for the defend-ants.

Nonuser for any period less than fifteen years creates no break in the continuity of possession, unless the intent to abandon is also shown. *Webb* v. *Richardson*, 42 Vt. 465, 474; *Aldrich* v. *Griffith*, 66 Vt. 390.

POWERS, J. The orator owns a valuable meadow located on the "Second Branch" of White River in Royalton. The defendant Stoughton owns a water-power on the Branch a little below the meadow, and there maintains a dam and equipment, and utilizes the same for the generation of electricity for lighting the stores and buildings in Royalton and South Royalton. This bill is brought to prevent the defendant from so maintaining his dam as to overflow the orator's meadow.

The orator does not deny the defendant's title, or his right to maintain his dam, but he does deny the right to maintain a dam so high and so tight as to set the water back over the meadow.

The defendant's title to the water power traces back to a deed from Dow Crane and wife to Lucius B. Wright and Horace A. Lyman, dated and recorded February 28, 1853. In 1854, Lyman and wife conveyed the same to Wright, and by successive conveyances the title came to the defendant Stoughton on January 15, 1877. None of these deeds define

the extent of the flowage right appurtenant to the property, but it is found that they cover this right, whatever it turns out to be. On the Land Records of Royalton, immediately following the record of the deed from Lyman and wife to Wright, appears the following memorandum in the handwriting of Calvin Skinner, who was then the clerk of that town.:

"The dam on said privilege rebuilt August, 1854, by L. B. Wright, 7 feet 4 inches in height from a bolt in the rock about or near the middle of said dam.

                                   Attest,          Calvin Skinner,
          Recorded April 24, 1855.                  Town Clerk."

It is to the height stated in this memorandum that the defendant claims the right to maintain his dam; and it appears from the report that such a dam would, if made tight, set the water back over certain portions of the orator's meadow and cause him substantial damage.

Prior to 1901, the dam in question had been maintained at varying heights and in different conditions of repair,—particular reference to which is here unnecessary. In that year it was thoroughly repaired by the defendant, and the electric light station erected and a supplemental steam plant installed. Flash boards were then added to the dam, thereby raising it to the height of seven feet and three and one-half inches from the iron pin mentioned in the memorandum. It is of these flash boards that the orator especially complains, as they cause the waters of the pond to overflow his meadow as stated. The defendant has always claimed the right to maintain his dam to the height specified in the memorandum above referred to, and this the orator knew and denied; and in July, 1900, the orator, by letter, warned the defendant against raising the dam so as to flow the meadow.

It is apparent from the findings that the defendant shows no title by grant of a right to flow the orator's meadow. No deed purports to convey that right, nor does the memorandum on the town records afford any evidence of such a right. The defendant claims, however, that this memorandum tends to prove what Wright claimed his right of pondage to be, that it was such notice to the orator, since he knew of it; and that it was a challenge to any one interested, to test the claim. These claims are not sustained. The memorandum is nothing more than an unofficial statement of the town clerk,—a mere narrative of a past transaction. Its indorsement upon the record book was not required by law, and it gained nothing as evidence by being so indorsed. Bush v. Van Ness, 12 Vt. 83; 1 Elliott Ev. §405.

But were it to be received as evidence on the grounds claimed for it, it would not affect the result of the controversy. Notice of the claim of a right to maintain a dam to a given height, alone, would not, though persisted in for the requisite period, result in a prescriptive right to flow the meadow. Indeed, the actual maintenance of the dam to that height for the specified time, would not necessarily so result. It is only when the dam begins to be so maintained that the orator's meadow is actually injured by the back-water, that prescription begins to run. This has been the law of this State ever since it was so decided in Hurlburt v. Leonard, Brayt. 202. "No prescription begins to run," says Judge REDFIELD in Norton v. Valentine, 14 Vt. 239, "until a right of action accrues; and no right of action accrues until injury is inflicted." And this rule has been consistently followed by this Court down to the present time. Lawrie v. Silsby, 76 Vt. 240, 56 Atl. 1106. The erection of the dam was no invasion of the orator's rights. It was only the subsequent use of it, in case that use threw.

the water onto his land, of which he could rightfully complain. *Sargent* v. *Stark,* 12 N. H. 332; *State* v. *Suttle,* 115 N. C. 784. Not only does the report fail to show that the water was thus thrown back onto the orator's land to his injury, but it expressly finds that "the evidence did not show whether such flooding had ever interfered with use of meadows before 1901, to the extent of actual damage."

The burden of establishing a prescriptive right lies upon him who asserts it. Gould Wat. §341. This defendant, though he may have shown a claim of the right for the required time, has not shown an exercise of the claimed right for the time required, and so has failed to establish the right.

Our disposition of the case will doubtless result in some extra expense to the defendant, but the situation presented does not require us to withhold the equitable relief to which the orator is plainly entitled.

*Decree affirmed and cause remanded.*